MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS V. FRED BALLIET.

Decided January 25, 1908.

**1.—Railroads—Switching—Negligence**

In a suit for personal injuries received by being knocked down and run over by a moving train in a switch yard of the defendant company, evidence considered, and held to raise issues of negligence on the part of the defendant company which justified the court in refusing a peremptory instruction for the defendant.

**2.—Same.**

An employee of the defendant railroad, the foreman of its cement gang, was neither a trespasser nor licensee while in the switch yards of the defendant for the purpose of getting his boarding car and tool car placed so that he could do the work which he had been ordered to do.

**3.—Switch Yards—Thoroughfare—Due Care.**

Where defendant's switch yards are used as a thoroughfare by its employees it is the duty of the defendant to use due care that those in the yards should not be injured by the negligence of other employees in switching the cars.

**4.—Crossing Track—Negligence.**

A person must use ordinary care in crossing a railroad track, but it should be left to the jury to determine whether or not ordinary care was used in failing to look and listen in approaching the track.

Appeal from the District Court of Grayson County. Tried below before Hon. B. L. Jones.

*Coke, Miller & Coke* and *Smith & Wall,* for appellant.—Appellee at the time he was injured was attempting to cross a track where he knew that switching was constantly being done, or where by the exercise of ordinary care, he might have known that switching was being done; he was not looking or listening or giving any heed to his surroundings, and was injured through his own negligence, and

a peremptory instruction in favor of appellant should have been given. Galveston, H. & S. A. Ry. v. Kutax, 72 Texas, 651; Galveston, H. & S. A. Ry. v. Bracken, 59 Texas, 71; International & G. N. Ry. v. Neff, 87 Texas, 307; International & G. N. Ry. v. Graves, 59 Texas, 331; International & G. N. Ry. v. DeOllos, 76 S. W. Rep., 225; Lumsden v. Chicago, R. I. & T. Ry., 73 S. W. Rep., 428.

There was evidence which tended to show that even if the cars had been operated with only the usual and necessary force, as they struck the cars standing on No. 7, appellee in all probability would still have been injured, and the charge was erroneous in permitting a recovery, regardless of that fact. Missouri, K. & T. Ry. v. Eyer, 70 S. W., 529; Texas & Pac. Ry. v. Scrivner, 49 S. W., 649; Missouri, K. & T. Ry. v. Hunt, 47 S. W., 70.

The charge is erroneous and places upon appellant a greater burden than the law requires, in that the jury are thereby, in substance, told that appellant would be liable for the failure of those operating the cars to keep a lookout, if by keeping a lookout they "would have seen plaintiff (appellee) in time to have checked the speed of the cars they were operating or given warning of the approach of same in time to have avoided his injury." International & G. N. Ry. v. McDonald, 75 Texas, 47; Missouri, K. & T. Ry. v. Stone, 23 Texas Civ. App., 111; Texas & Pac. Ry. v. Staggs, 37 S. W. Rep., 611; Rozwadoskie v. International & G. N. Ry., 1 Texas Civ. App., 493.

*Wolfe, Hare & Maxey*, for appellee.—Appellees makes the following counter-propositions:

1st.   Whether appellee was guilty of contributory negligence or whether the appellant was guilty of negligence were questions of fact for the jury to determine under all the evidence.

2d.   The undisputed evidence showed that appellee was an employe of appellant. That his duty called him to the place where he was injured in defendant's yards, and that he was there by reason of his employment and in the furtherance of his master's work under his employment. He was neither a trespasser or licensee and appellant's servants operating engines and cars, owed appellee and other employes in the yard, the duty of exercising ordinary care to avoid injuring them.

3d.   The finding of the jury that appellant was guilty of negligence, which caused appellee's injuries and that appellee was not guilty of negligence is amply supported by the testimony.

4th.   Appellant's special charge No. 1, was upon the weight of the evidence, and would have been an invasion of the province of the jury and was properly refused by the court. Choate v. S. A. & A. P. Ry. Co., 90 Texas, 88; Houston & T. C. Ry. Co. v. Turner, 99 Texas, 547; International & G. N. Ry. Co. v. Howell, 20 Texas, 123.

RAINEY, CHIEF JUSTICE.—Fred Balliet instituted this suit against the Missouri, Kansas & Texas Railway Company of Texas to recover for personal injuries to himself received in the company's yard at Hillsboro, Texas. Defendant plead a general denial, contributory

negligence and assumed risk. A trial resulted in a verdict and judgment in favor of plaintiff for $9,750, from which this appeal is taken.

The facts are in substance as follows: On July 11, 1906, plaintiff was in appellant's employ as foreman on a concrete gang. He had been at work at Greenville for some two weeks when he was ordered by his foreman, Mr. Wheeler, to take his cars to Hillsboro, Texas, to put in a concrete platform around the passenger depot there. He had a boarding car and a tool car; he and the men of his gang stayed in the boarding car. He went to Hillsboro on a passenger train, while his cars were taken there by a local freight train. He reached Hillsboro about 10 a. m. July 11. His cars had not arrived, and he did not see them until about 2 p. m., when they passed the depot, being taken to South Yards. He went to the freight agent at the freight office across from the passenger depot and asked him about the cars; that office was about one mile from the South Yards. As soon as he arrived in Hillsboro that morning he had gone to the freight agent and told him to set the cars as soon as possible in order that he might begin work; the agent said he would do so as soon as he could. He saw the agent again after 1 p. m. and asked him to set the cars, and the agent replied that the cars could not be set until 3 p. m. Later he went to the agent again and was informed that the cars could not be set until late at night. He then said to his crew, "Let us go out to the South Yards and see the yardmaster, so we can get the bunk cars and tool cars down here at the depot where we will have a place to sleep and to stay." They then rode on a switch engine out to South Yards to see the yardmaster. He didn't know the name of the yardmaster. He had been through the South Yards about a half dozen times before with his cars. On those occasions he sometimes stayed a half day, and sometimes only two or three hours, and his cars would be stationed in the South Yards and he would have to see the yardmaster to get the cars ordered out. They rode to the South Yards, this time on the main line. He got off the switch engine right where the main line came into the yards—at the north end of the yards—and went to the bunk car, which was sitting at the end of the second track. He stayed in the bunk car about five minutes, then went to the yardmaster's office, but the yardmaster wasn't there. He then went east from the yardmaster's office, looking for the yardmaster, and was injured while crossing the tracks. He was going across east, there were some cars standing on the track south of where he was about to cross, but none on the north ends of the tracks. Just as he stepped on the last track, about five or six feet from some cars which were standing there, the cars came back very rapidly; he jumped off the track, but the cars hit him, knocking him down and cutting off his right arm and breaking his left leg above the ankle. He had passed over several tracks before he was struck, and had reached the last track, which had cars on it. The tracks were all blocked and there were cars on the track west of the one where he was struck. At the time of the collision he was right in the center of the track and jumped east. He was struck

by the northeast corner of the car on the right shoulder and was knocked about fifteen feet north, but doesn't remember whether he fell on the rail or not; two wheels ran over him and when the car stopped he was lying near the door of the car, which is situated in the center of the same on the east side. It was a refrigerator car. He didn't know about where the switch engine was before he started over around these cars. He had never been a switchman, but had been around about where switching had been done. Had been in railroad service about six years and knew how switchmen handle cars in yards. The grounds in the yards were level. He did not know how many cars there were in the string of cars he was trying to pass around; he did not know what made the cars move and didn't see what struck them. The cars started very suddenly, jumped in the air and dust flew out of them; switchmen usually couple cars very easy; these cars were coming too fast, about fifteen or twenty miles per hour, judging from the way they were struck. Switching in the proper manner cars ought to be moved about two or three miles per hour; if these cars had been running three or four miles per hour he would have had plenty of time to have gotten away. The bell was not rung, nor was the whistle blown, nor did he hear any warning or alarm.

Plaintiff knew that in switching it is usual for cars to be kicked in against other cars. On this occasion the cars were kicked with unusual and unnecessary force, which caused the car struck to move very rapidly, striking plaintiff, knocking him down and running over him, causing the loss of his arm and severely injuring his leg. Persons having business there are in the habit of going across the track, and the yards are used all the time as a thoroughfare by the employes of the road. From these facts we conclude that the defendant was guilty of negligence and that plaintiff was not guilty of negligence and did not assume the risk.

Appellant complains of the trial court for refusing a peremptory instruction to the jury to return a verdict for defendant. We think there was no error in this respect. The facts presented issues that required the determination of the jury and it was proper for the court to submit them to the jury.

Many of appellant's assignments of error attacking the court's charge and in refusing special charges asked by appellant are based upon the theory that plaintiff was a trespasser, or at most a mere licensee and defendant owed him no duty. We are of the opinion that this theory is untenable. Plaintiff was an employe of the defendant, and while his regular duties were not to be performed in and about the Hillsboro yard, yet, as foreman of the cement crew, he had charge of a boarding car and tool car for the men under him, and these cars had to be placed in the yards at Hillsboro during the time he and his men were working there, and in furtherance of having his cars placed he was hunting the yardmaster, who was presumably in the yard, and in prosecuting the search in the yard he could not be considered a trespasser or merely a licensee. Besides, the yard was used as a thoroughfare by the employes, and it was the duty of the employes in doing the switching to use due

care that those in the yard should not be injured by their negligence.   Houston & T. C. Ry. Co. v. Turner, 99 Texas, 547; International & G. N. Ry. v. Howell, 20 Texas Ct. Rep., 123.

The appellant complains of that portion of the court's charge which instructed the jury, in substance, that if they believe that the servants of defendant operating the cars, struck the car that injured plaintiff and that they were propelled with unusual and unnecessary force and violence, and that such operation constituted negligence, to find for plaintiff. The contention is that the court in giving this charge ignored the question whether or not the employes operating the cars knew, or by the exercise of ordinary care might have known of the presence of some one on the track, and knew, or might have known, that the cars would be set in motion. We are of the opinion that the charge of the court in this respect was proper. It was the duty of said employes under the circumstances to observe care in making the switch to prevent injury to any person lawfully on the track, and if said cars were operated with unusual and unnecessary force, the jury were authorized to find negligence. The court, in another part of its charge, had defined negligence and ordinary care and the failure complained of was harmless.

The proposition is made that "Said charge is erroneous and places upon appellant a greater burden than the law requires, in that the jury are thereby, in substance, told that appellant would be liable for the failure of those operating the cars to keep a lookout, if by keeping a lookout they 'would have seen plaintiff (appellee) in time to have checked the speed of the cars they were operating or given warning of the approach of same in time to have avoided his injury.'" We see no error in the court's charge in this respect. The court left it to the jury to determine whether or not it was the duty of defendant's employes to keep a lookout and whether the failure to do so was negligence, and was the proximate cause of the injury. The charge was warranted by the evidence.

The following special charge was refused, of which appellant · complains, viz.: "In this case you are instructed that ·it was plaintiff's duty in approaching and going upon defendant's tracks to look and listen for approaching cars on said track, and the evidence under all the circumstances failing to show that he did this, you will return a verdict for the defendant." There was no error in refusing to give this charge. It is upon the weight of the evidence in that it tells the jury that it was plaintiff's duty to look and listen, thereby assuming it was negligence to fail to look and listen. The rule is, that a person must use ordinary care in crossing a railroad track, and it should be left to the jury to say whether or not ordinary care was used in failing to look and listen in approaching the track. The court properly submitted this issue in its main charge. Gulf, C. & S. F. Ry. v. Anderson, 76 Texas, 244; International & G. N. Ry. v. Dyer, 76 Texas, 156; Galveston, H. & S. A. Ry. v. Porfert, 72 Texas, 344.

The court fairly, fully and correctly submitted all the issues in the case to the jury.

We find no error of the trial court that requires a reversal of the case and the judgment is affirmed.

*Affirmed.*

Writ of error refused.