ST. LOUIS SOUTHWESTERN RY. CO. OF
TEXAS v. HARRELL et ux.  (No. 175.)

(Court of Civil Appeals of Texas.  Beaumont.
April 13, 1917.  Rehearing Denied
May 9, 1917.)

1. RAILROADS ⬥⟲350(13)—INJURIES AT CROSS-
INGS—QUESTION FOR JURY—CONTRIBUTORY
NEGLIGENCE.

In an action for injuries sustained at a rail-
way crossing, when plaintiff's automobile col-
lided with a railway motor car, evidence *held* to
make a question for the jury as to plaintiff's
negligence, and a peremptory instruction for
defendant was therefore properly denied.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. § 1166.]

2. NEGLIGENCE ⬥⟲136(26) — CONTRIBUTORY
NEGLIGENCE—QUESTIONS OF LAW OR FACT.

To constitute contributory negligence as a
matter of law, the acts of the person charged
with such negligence must be in violation of
statute or a city ordinance, or the evidence as a
whole must be such as to allow of but one infer-
ence to be drawn therefrom by ordinary minds.

[Ed. Note.—For other cases, see Negligence,
Cent. Dig. §§ 286, 333.]

3. RAILROADS ⬥⟲348(6)—ACTIONS FOR INJU-
RIES AT CROSSINGS—EVIDENCE—CONTRIBU-
TORY NEGLIGENCE.

In an action for injuries sustained when
plaintiff's automobile collided with a railway
motor car at a crossing, evidence *held* to warrant
the jury in finding that plaintiff was guilty of
contributory negligence.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 1144, 1149.]

4. RAILROADS ⬥⟲344(1)—ACTIONS FOR INJU-
RIES AT CROSSINGS — PLEADING—CONTRIBU-
TORY NEGLIGENCE.

In an action for injuries in a crossing acci-
dent, defendant, pleading contributory negli-
gence, was not required to specify the particu-
lars in which plaintiff was negligent, in the ab-
sence of a special exception directed against the
general plea.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. § 1107.]

5. RAILROADS ⬥⟲352—CROSSING ACCIDENTS—
VERDICT AND FINDINGS.

In an action for injuries in a crossing acci-
dent, where the jury found specially that plain-
tiff did not see the approaching train in time
to stop her automobile before it collided with
the train, a further finding that by the ex-
ercise of ordinary care she would have seen the
approaching train in time to stop before col-
liding therewith, if she had been keeping a look-
out, was a finding that plaintiff was negligent,
since, while there is no statute requiring one ap-
proaching a crossing to stop, look, and listen,
or do either, and a failure to do all or either is
not as a matter of law contributory negligence,
a party must use ordinary care to ascertain by
some means whether a train is approaching.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. § 1216.]

6. APPEAL AND ERROR ⬥⟲930(3)—PRESUMP-
TIONS—ISSUES NOT FOUND BY JURY.

In an action for injuries in a crossing ac-
cident, where the jury found specially that
plaintiff by exercising ordinary care would have
seen the train in time to stop before colliding
therewith, if she had been keeping a lookout,
and that such failure to keep a lookout caused
or contributed to her injury, without finding
that it proximately caused or proximately con-
tributed thereto, a judgment for plaintiff on the
special verdict could not be upheld, under the

rule that issues not decided by a special verdict
are presumed on appeal to have been determined
by the trial judge, so as to uphold the judgment,
since as a matter of law plaintiff's negligent
failure to keep a lookout, if such failure was
negligence, was a proximate cause of, or proxi-
mately contributed to, the injury.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 3759.]

7. APPEAL AND ERROR ⬥⟲1175(6)—REVERSAL
—RENDERING JUDGMENT FOR APPELLANT.

Where, on the special verdict, defendant was
entitled to judgment, and the case was fully
developed, the court, on reversing a judgment
for plaintiff, will render judgment in favor of
defendant.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4580.]

8. TRIAL ⬥⟲350(7) — SPECIAL INTERROGATO-
RIES—QUESTIONS TO BE SUBMITTED.

In an action for injuries in a crossing ac-
cident, there was no error in submitting issues
as to whether plaintiff by the exercise of ordi-
nary care would have seen the approaching train
in time to avoid the collision, if she had kept
a lookout, and whether her failure to keep a
lookout caused or contributed to the injury.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 830.]

9. APPEAL AND ERROR ⬥⟲1170(10)—HARMLESS
ERROR—SPECIAL ISSUES.

Under rule 62a for Courts of Civil Appeals
(149 S. W. x), prohibiting reversals for errors,
except such as are reasonably calculated to
cause and probably did cause the rendition of
an improper judgment, if such issues constituted
a charge on the weight of the evidence, in that
they assumed no lookout was kept, and that
the failure to keep a lookout would bar a recov-
ery, though not the proximate cause of the ac-
cident, such defect did not justify a reversal,
where, in connection with other special issues
and the charge, the error was not calculated to
cause, and probably did not cause, an unfavor-
able verdict.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4066, 4544.]

Appeal from District Court, Angelina Coun-
ty; L. D. Guinn, Judge.

Action by C. H. Harrell and wife against
the St. Louis Southwestern Railway Com-
pany of Texas.  From a judgment for plain-
tiffs, defendant appeals.  Reversed, and
judgment rendered for defendant.

E. B. Perkins, of Dallas, Daniel Upthe-
grove, of St. Louis, Mo., S. R. Sayers and
Denman & Thomas, all of Lufkin, and Marsh
& McIlwaine, of Tyler, for appellant.  Woods,
King & John, of Houston, and I. D. Fairchild,
of Lufkin, for appellees.

HIGHTOWER, C. J.  This suit was
brought by appellees, C. H. Harrell and wife,
against appellant, St. Louis Southwestern
Railway Company of Texas, to recover dam-
ages for alleged personal injuries to Mrs.
Harrell, and for damages to an automobile
which was being driven by Mrs. Harrell, and
which was struck by an engine of a passing
train at the crossing of a public street over
appellant's railroad track in the town of
Lufkin.  The trial was had with a jury, and
the case having been submitted upon special
issues, upon the verdict of the jury in re-

sponse to such special issues, the court entered judgment against appellant for the sum of $2,000. In due time appellant filed its motion for new trial, which was overruled by the court, and notice of appeal given, and the case is now properly before this court for review.

Appellees' petition charged appellant with negligence in the following particulars: (1) In operating and running its motor train at a high and dangerous rate of speed. (2) In operating and running its train at a speed greater than 8 miles per hour, in violation of an ordinance of the city of Lufkin. (3) In failing to blow the whistle 80 rods from the crossing. (4) In failing and refusing to continuously ring the bell on the engine for 80 rods before reaching the crossing. (5) In failing to keep a lookout before approaching the crossing for people who might be using the same.

Appellant answered by general denial, and by the following plea of contributory negligence:

"And, further answering herein, defendant says that if plaintiff Mrs. C. H. Harrell was injured, as alleged in plaintiffs' petition, and if the automobile, damage to which is claimed in said petition, was damaged as therein alleged, then it says that the injury, if any, received by Mrs. C. H. Harrell, and the damage, if any, done to said automobile, were directly and proximately caused by Mrs. C. H. Harrell's own negligence, and had it not been for her own negligence, which directly caused and contributed to cause her injury and the damage to said automobile, she would not have been injured, and the automobile would not have been damaged."

Upon conclusion of the testimony, the case was submitted to the jury on the following special issues:

Issue No. 1: "Was the train or motor car of defendant company running in excess of 8 miles per hour, as it approached and passed the crossing on Abney avenue?" Jury's answer: "Yes."

Issue No. 2: "Was such rate of speed the proximate cause of the injury to the automobile and the plaintiff Mrs. C. H. Harrell, if any?" Jury's answer: "Yes."

Issue No. 3: "Was the whistle on the motor car blown at a distance of at least 80 rods from the crossing of Abney avenue?" Jury's answer: "Yes."

Issue No. 4: "Was the failure to blow the whistle at a distance of at least 80 rods before reaching the crossing, where the collision occurred, the proximate cause of the injury, if any, to the automobile and to Mrs. Harrell?" No answer by jury.

Issue No. 5: "Was the bell on the motor car continuously rung from a point beginning 80 rods at least before reaching the crossing of Abney avenue up to the time of the collision?" Jury's answer: "No."

Issue No. 6: "Was the failure to so continuously ring the bell for such distance before reaching Abney avenue crossing the proximate cause of the injury, if any, to the automobile and to the plaintiff Mrs. C. H. Harrell?" Jury's answer: "No."

Issue No. 7: "Would the motorman or engineer on the train of the defendant, in the exercise of ordinary care, in keeping a lookout for parties who might be intending to use the crossing on Abney avenue, have discovered the approach of the automobile in time, with the means at hand, and in safety to the train and passengers, to have stopped the train and prevented the collision?" Jury's answer: "Yes."

Issue No. 8: "Was the failure to stop the train the proximate cause of the injury, if any, to the automobile and to the plaintiff Mrs. C. H. Harrell?" Jury's answer: "Yes."

Issue No. 9: "What was the difference in the reasonable cash market value, at Lufkin, Texas, on the 21st day of May, 1914, of the automobile just before the collision and just after the collision?" Jury's answer: "$600."

Issue No. 10: "What amount of money, if paid now in cash, would reasonably compensate the plaintiff Mrs. C. H. Harrell for the injuries, if any, received by her in the collision?" Jury's answer: "$1,500."

Issue No. 11: "Did Mrs. C. H. Harrell, plaintiff, see the approaching train in time to have stopped her automobile before the same collided with the train?" Jury's answer: "No."

Issue No. 12: "Was the failure of the plaintiff Mrs. C. H. Harrell to stop the automobile before it collided with the train the cause, or did it contribute to the injury, if any, to the automobile and to Mrs. Harrell?" No answer by jury.

Issue No. 13: "Would the plaintiff Mrs. C. H. Harrell, by the exercise of ordinary care, have seen the approaching train in time to have stopped her automobile before the same collided with said train, if she had been keeping a lookout for said train?" Jury's answer: "Yes."

Issue No. 14: "Did the failure of Mrs. C. H. Harrell to keep a lookout for said train cause or contribute to the injury, if any, to her automobile and to herself?" Jury's answer: "Yes."

It will be observed that answers by the jury to issues 4 and 12 above were rendered unnecessary by the jury's answers to preceding issues. Upon this verdict, appellees filed their motion for judgment, and, in the alternative, for a new trial. The appellant also filed its motion for judgment upon the jury's verdict. Both motions having been duly presented, the court granted appellees' motion for judgment, and overruled that of appellants.

Without setting out the judgment in full, which is unnecessary, it is in appellees' favor for the full amount of damage sustained by Mrs. Harrell to her person and also the damage done to the automobile, and the judgment concludes with these words:

"It is therefore the judgment of the court, and it is so ordered, adjudged, and decreed, upon the findings of the jury, and upon the pleadings, the law, and the evidence, that the plaintiffs, C. H. Harrell and Mrs. C. H. Harrell, husband and wife, do have and recover of and from defendant," etc.

While appellant's brief presents several assignments of error, considered as a whole, its contentions here are but two: First. That the court erred in refusing to give appellant's requested peremptory instruction. Second. That the court erred in failing to render judgment for appellant upon the findings of the jury.

[1] The first assignment of error is as follows:

"The court erred in refusing to peremptorily instruct the jury to return a verdict for the defendant, as requested by defendant in its special charge No. 1, as follows: [This was a peremptory instruction]—for the reason that the evidence shows, and there is no evidence otherwise showing, that Mrs. Harrell's view of the ap-

proaching train was unobstructed for a distance of more than 150 feet before she reached the crossing; that she was familiar with the crossing, and knew that said train was scheduled to pass over the street at or about the time the collision occurred; that, had she kept a reasonable lookout for said train, she would have been apprised of its approach in time to have stopped her automobile before it collided with the train; that an ordinarily prudent person under similar circumstances would have seen or been apprised of the approaching train in time to have averted the accident, and plaintiff, by not discovering the approach of the train, under the circumstances, was guilty of negligence that directly and proximately contributed to the personal injury received by her and to the injury to her automobile."

A proper consideration of this assignment necessitates a statement at some length of the evidence bearing on the issue of contributory negligence interposed as a defense by appellant, and we make the following as showing how the accident happened, and surrounding circumstances and conditions, which is taken largely from appellant's brief:

Mrs. C. H. Harrell testified, in substance: That she had lived in and around Lufkin since she was married, and was raised close to town, and remembered the accident which happened to her on the 21st day of May, 1915. The accident took place at a point where Abney avenue crosses the railroad at something like about 11 o'clock a. m. The accident was caused by the motor car of the railway company running into her automobile at the crossing. Miss Leach and Mrs. Calhoun were in the car with her at the time. Mrs. Harrell was driving the automobile. She had been out to her mother's, and was coming back to town, and was driving up Abney avenue in the direction of where Abney avenue crossed the railroad track. This was a public crossing in the city of Lufkin. Miss Leach, Mrs. Calhoun, and plaintiff were all on the front seat of the automobile as they approached the railroad crossing. She believed there were about five tracks at the crossing. They were traveling east, something like northeast, in approaching the crossing. The train that struck the automobile was traveling southeast toward town; they were on the west side of the railroad track, coming towards town. The motor car which struck the automobile was about the size of an ordinary passenger coach, and there was another coach behind it, about the same size.

The witness recognized a map introduced in evidence, and identified the crossing, the different tracks thereon, and the direction the automobile was coming at the time of the accident. When the automobile started east on Abney avenue, approaching the railroad crossing, the motor car was coming from the north, going south. The motor car struck the automobile on the last or next to the last track from the crossing, as they were going over. Just before the automobile got to the first track, Mrs. Harrell slowed the automobile and looked. The first track was the East Texas track; she slowed down before she got to it, and looked up the track, which was north, and then looked back to the south, but did not hear or see any train. She did not know just how far up the track she could see, but thought that it was a good piece. It seemed like it was a good long ways; "I would think about 300 feet." She was on the public street at the crossing at the time, and when she reached the last track the train struck her automobile. "When I first saw the motor car, it did not look to me like I was over this far from it; that is, it did not look to me like it was more than that far from me (indicating). I must have been about 2½ or 3 feet from the track it struck me on when I first saw it, and it did not seem to me like it was much more than that distance from the front of my automobile. When I saw the motor car approaching that close to me, my first thought was to stop my car; but I knew I did not have time to do that, and I did not try to do it." "I knew that, if I tried to stop the car, I would likely get right on the track before it would stop, and we all would certainly be killed." Mrs. Harrell decided to put all the gasoline she could to the car, and cross in front of the motor car. The motor did not look to be more than 3 or 4 feet from the front end of the car, and for that reason she did not try to stop her automobile, and thought that, if she undertook to stop it, the motor would strike the front end of the automobile, where they were sitting.

The motor struck the left hind wheel of the automobile, and turned the front of the car back toward the train and track, about half way around. Mrs. Harrell did not hear any bell ringing on the motor car, nor any sound of the whistle. If she had heard the bell ringing before the motor car got to the crossing, she would have had plenty of time to have stopped the car, and would have done so. The automobile was running about 8 miles an hour, and the motor must have been running at least three times as fast. She could have seen the motor car when she looked north, if it had been within 300 feet of the crossing, or as close to the crossing as the Day house. When she first looked up the track, the automobile had reached the first or second track at the crossing. She first looked north when she was something like 50 feet from where the automobile was struck by the motor car. She was about 50 feet from the place where the car was struck when she first looked north, and the railroad track was clear as far as from where she was to the Day house, or about 300 feet. She looked north, and did not see the approach of any train for a distance as far as from where she was to the Day house. She was running about 8 miles an hour, and the car struck her automobile before she could get across the track. It knocked the back wheel of the car off entirely, and tore it up pretty badly. The motor train consisted of the

motor car and another coach, and went on by the crossing at least the length of the train before it stopped, after striking the automobile. The automobile was a brand new Overland, which Mr. Harrell had just given her about the 4th of April before this happened in May. She had used it about three or four times a week. She had been driving a car about a year, or a little less, when the accident occurred, and could drive one wherever she wanted to go, and had no trouble. Mrs. Harrell further testified that, if the bell had been ringing on the engine as it approached the crossing, she could have heard it, and further that, if the bell had been ringing for 100 feet, or 150 or 200 feet, before it reached the crossing, she would have heard it, and would have stopped the automobile and waited for the train to have crossed.

On cross-examination, Mrs. Harrell further testified, substantially, as follows:

Referring to the map, she stated that she could tell the route she was traveling the morning of the accident before the collision. She came into the street which runs by Humerson's ice factory, just west of the Bonner Hotel, from Ellis avenue, and went north, and crossed Ellis avenue over to Abney avenue. The street was in good condition, and it was customary for people to drive pretty rapidly on this street; but she never drove her car fast. Just before she got to the first track, approaching the crossing, she looked to the north. There are five tracks there at the crossing; maybe six. She slowed down her car, and looked to the north up the track, and listened. At this point she could see up the track as far as from where she was to the Day house, or about 300 feet. There was no obstruction at that distance. It was after she turned into Abney avenue and got to the first track that she looked north, and just as she got across the first track, and between the first and second tracks, she looked north again. She thought the first track was what was known as the Groveton track, and the next tracks were siding tracks or switches, until you get to the main line track, or the Cotton Belt. That, after looking the second time, she proceeded, and the accident occurred. She and the other ladies were in the front seat of the automobile, and were talking and laughing. She never heard any whistle or bell sounded at all. Her best judgment was that it was from 40 to 50 feet to the crossing when she first looked up the track.

Coming up Bonner avenue, before getting to Abney avenue, one could see about as far up the track as one could from the place she first looked up the track. She did not know whether one could see that far up the track from Bonner avenue, because the old canning factory, which has burned down since then, would probably have obstructed the view, and there were also negro houses in there. She did not know whether she could see very far up the track on a line east of the negro houses or not. She went upon the ground on the day before testifying to see how far she could see up the track from the point where she first looked north on the day of the accident, and stated that she saw up the track then as far as from where she was to the Day house, or about 300 feet. She did not notice on yesterday (the day before testifying), after the automobile got on Abney avenue, whether one could see up to the new mill or not. She saw the new mill, but thinks it was from a view on Bonner avenue. She did not know whether one could see the new mill after getting on the track, but was not sure about it. She did not remember whether she looked for that purpose, or not, after she got on the track. She never looked for the new mill the day she was driving along there and happened to this accident. She looked up that way, but did not look for the new mill. She looked up the track as far as she could see up it, but it was not as far as the new mill. She never saw the approaching train at all. Her car was making a little noise in running. She was sure the motor car was also making some noise in running, which she had heard before, and was familiar with. She did not hear a noise when she first looked up the track, nor when she looked the second time, and did not hear any noise until the motor was right on them, and saw the motor before she heard any noise. She was familiar with that crossing where the accident happened, had crossed it a good many times, and knew that there were several tracks there, possibly five, but did not know the exact number of tracks.

She knew a motor car was due at Lufkin about 11 o'clock in the morning; that is about the same time it has been coming into Lufkin for a good many years. It was due at that time each morning, since the motor car was put on, and she knew on the morning of the accident that the motor car from Tyler was due in the town of Lufkin about 11 o'clock, and traveled over that track where the accident occurred. (The accident in question happened about 11 o'clock in the morning.) The running of her car made some noise. One in an automobile has to talk pretty loud to others in the car to be understood. She had been driving this car since about the 4th of April before the accident, and was very familiar with it, and could drive it anywhere she wanted to. The car was pretty easily stopped, and that, having driven it the length of time she had, she could stop it almost instantly if it was not going very fast. When the car was going 8 miles an hour, she could stop it very quickly, and in a short distance by putting on the brake. The car had two brakes, the first brake and emergency brake. Going at a slow rate of speed, her car could be stopped almost instantly. It is very easily stopped. She could not tell just the number of feet in which she could stop the car going at the

rate of 8 miles an hour, never having made the test, but presumed, however, that when the automobile was going at 8 miles per hour she could have stopped it within a very few yards. She never drove her car over 10 miles an hour. Going at the rate of 8 miles an hour, her car could be stopped within a very few feet. When she first got up, and saw what had happened, and that no one was killed, she told them that she was very sorry that her car had gotten torn up; that she was thinking more about the car being torn up than anything else. She walked to the motor car, and got on it, and came to the depot on the motor car. When she first saw the motor car, it must have been the length of a car and a half from her. She did not know how long that car was, but it must be something like 10 or 12 feet long. She would say possibly 10 feet long, and the motor car was about a car length and a half from her car when she saw it. That would make it about 15 or 18 feet away from her at that time. "I know what first called my attention to the approach of the motor car. Mrs. Calhoun said, 'Oh! there is the train.' I had not seen it until that very time." Her car was driven from the left side, the steering wheel being on the left-hand side of the car, which placed her next to the motor car. She believed Mrs. Calhoun was next to her on the seat, and Miss Leach on the outside. "I never saw it at all until Mrs. Calhoun said, 'Oh! there is the train.' That is the first time I had seen it."

Mrs. Calhoun and Miss Leach, who were in the automobile with Mrs. Harrell at the time of the accident in question, testified in the case, and their testimony largely corroborates that of Mrs. Harrell as to the manner of the accident, the speed at which the automobile was traveling, the speed at which defendant's train was traveling, the point where the automobile was when the approaching train was first discovered, their failure to hear the bell on the approaching train, if it was ringing, and their failure to hear the sound of the whistle, if it was blown, etc. We deem it unnecessary to set out more at length the testimony of these two witnesses.

There were a number of other witnesses, who testified on the trial, some for appellees and some for appellant; but these witnesses never saw the accident in question, and their testimony relates mostly to the location where the accident occurred, obstructions in the way of buildings, etc., along the railroad track before the crossing was reached by the approaching train, the distance at which the approaching train could have been discovered by persons situated as the occupants of the automobile were seated at the time of the accident, and before the crossing was reached by the train, and the speed at which the train was going at the time it reached the crossing. None of the witnesses, however, testified that the speed of the approaching train was less than 12 miles an hour. Defendant's employés in charge of the engine testified that the whistle was blown at least 80 rods from the crossing; that the bell on the engine was continuously rung from a distance of 80 rods from the crossing until the crossing was reached, etc. We deem it unnecessary to set out any of this testimony more at length, for the purposes of disposing of this assignment.

After a careful consideration of the entire statement of facts and the authorities bearing upon this contention, cited both by appellant and appellees, we have reached the conclusion that the trial court would not have been warranted in giving appellant's requested peremptory instruction, based upon the theory that the evidence showed that appellee Mrs. Harrell was guilty of contributory negligence as a matter of law, but think that the state of the evidence, taken as a whole, was such that it became a question of fact for the jury to determine whether or not Mrs. Harrell was guilty of contributory negligence.

[2, 3] We understand it to be the rule in this state that, to constitute contributory negligence as a matter of law, the acts of the person, as constituting such negligence, must be in violation of law, such as a statute, or a violation of a city ordinance, or the state of the evidence, taken as a whole, must be such as to allow of but one inference to be drawn therefrom by ordinary minds. Without discussing the evidence adduced on the trial, as substantially mentioned above, we have reached the conclusion that the state of the whole evidence was not such as to permit of only one inference to be drawn therefrom by ordinary minds, which the jurors trying the case are presumed to have possessed. We do not doubt for a moment that the evidence, taken as a whole, was such that the jury would have been warranted in finding, as we think they did, that Mrs. Harrell was guilty of contributory negligence on the occasion in question; but this is quite different from holding that she was guilty of contributory negligence as a matter of law. Of course, it was not contended that Mrs. Harrell violated any law or any city ordinance in any respect, and that her act in doing so caused or contributed to cause her injury. Without discussing in detail the authorities sustaining the conclusion we have reached on this assignment, we cite the following: Adams v. G. H. & S. A. Ry. Co., 164 S. W. 853; Hovey v. Sanders, 174 S. W. 1025; Huber v. T. & P. Ry. Co., 113 S. W. 984; Dalwigh v. I. & G. N. Ry. Co., 42 S. W. 1009; H. & T. C. Ry. Co. v. Laskowski, 47 S. W. 59; I. & G. N. Ry. Co. v. Starling, 16 Tex. Civ. App. 365, 41 S. W. 181; G., C. & S. F. Ry. Co. v. Roane, 33 Tex. Civ. App. 299, 76 S. W. 771; M., K. & T. Ry. Co. v. Balliet, 48 Tex. Civ. App. 641, 107 S. W. 906; T. & F.

S. Ry. Co. v. Frugia, 43 Tex. Civ. App. 48, 95 S. W. 563.

Appellant's first assignment is therefore overruled.

Appellant's second, third, fourth, and fifth assignments of error present practically the same question, and are grouped, and the same will therefore be treated as one assignment.

The second assignment complains that the court erred in rendering judgment in favor of appellees against appellant on the special verdict of the jury, and the third assignment complains that the court erred in not rendering judgment for appellant and against appellees on the special verdict of the jury. The verdict of the jury as a whole, consisting of answers to special issues, is hereinbefore copied, and it will be seen therefrom that the answers of the jury to special issues Nos. 1, 2, 7, and 8 were in favor of appellees as to two grounds of negligence charged in appellees' petition, and these findings by the jury entitled appellees to a judgment for the full amount as rendered by the trial court, unless the jury's answers to special issues Nos. 13 and 14 have the effect to entitle appellant to judgment in this cause. In other words, the jury answered to issue No. 1 that the train or motor car of appellant, at the time of the accident in question, was running in excess of 8 miles per hour, as it approached and passed the crossing on Abney avenue in the town of Lufkin, where the accident occurred; and to issue No. 2 the jury answered that such rate of speed was the proximate cause of the injury to Mrs. Harrell and her automobile. The jury also answered to issue No. 7 that the motorman or engineer on the train of defendant, in the exercise of ordinary care, in keeping a lookout for parties who might be intending to use the crossing on Abney avenue, would have discovered the approach of the automobile in time, with the means at hand and in safety to the train passengers, to have stopped the train and prevented the collision; and to issue No. 8 the jury answered that the failure by appellant's employés in charge to stop the train was the proximate cause of the injury to Mrs. Harrell and her automobile. In answer to special issue No. 13 the jury found, however, that Mrs. Harrell, by the exercise of ordinary care would have seen the approaching train, which caused the injury, in time to have stopped her automobile before the same collided with said train, if she had been keeping a lookout for said train; and to issue No. 14 the jury found, in effect, that Mrs. Harrell failed to keep a lookout for the approach of the train to the crossing on the occasion in question, and that such failure on her part proximately caused or contributed to her injury and that of her automobile.

It is strenuously contended by appellees' able counsel that the jury's answers to issues Nos. 13 and 14 do not have the legal effect to entitle appellant to judgment upon their defense of contributory negligence on the part of Mrs. Harrell, for the reason, as counsel contend, that the jury's answer to question No. 13 is not a finding to the effect that Mrs. Harrell was guilty of contributory negligence in not discovering the approach of the train to the crossing in time to have avoided a collision with the same, and as to the jury's answer to issue No. 14 counsel for appellees contend that the same is, in effect, not a finding by the jury that the failure on the part of Mrs. Harrell to keep a lookout for said train and avoid contact therewith was the proximate cause or proximately contributed to her injury or that of her automobile. Now, if appellees' counsel be correct as to these contentions, then it follows, of course, that the trial court was correct in rendering judgment for appellees, and therefore correct in its refusal to render judgment in favor of appellant.

[4] It is true that the plea of contributory negligence interposed by appellant in its answer was only a general one, and did not specify in what respect Mrs. Harrell was guilty of contributory negligence on the occasion of the accident; but it seems that no special exception was directed against such general plea, and therefore there was no necessity for appellant to specify the particulars or respects in which it would contend Mrs. Harrell was guilty of contributory negligence.

[5] From the evidence of Mrs. Harrell, as hereinbefore substantially stated, it will be seen that she testified that she did not see appellant's train, as it approached the crossing where the accident occurred, in time to stop her automobile and avoid a collision with the train, though she testified that she both looked and listened for a train before going upon the crossing, and among other things stated the distance her car was from the crossing at the time she so looked and listened, etc., and further testified as to the rate of speed that her car was traveling when it approached the crossing, and also the rate of speed, approximately, of appellant's train as it approached the crossing. Now, we do not deem it necessary to go over this testimony again at this point, but merely mention this portion of Mrs. Harrell's testimony, in order that its bearing upon the issue of contributory negligence may be clearly seen and construed, together with the jury's findings as to issues Nos. 13 and 14. Issue No. 11 submitted to the jury was as follows:

"Did Mrs. Harrell, plaintiff, see the approaching train in time to have stopped her automobile before the same collided with the train?"

To this question the jury's answer was: "No." Therefore the trial court was authorized, and we think compelled, in view of the state of the evidence, to respect and uphold this finding by the jury, and therefore to say by its judgment that Mrs. Harrell did not

see appellant's train as it approached the crossing in time to have stopped her automobile before the collision. The jury made no answer to issue No. 12, which was as follows:

"Was the failure of the plaintiff, Mrs. C. H. Harrell, to stop the automobile before it collided with the train the cause, or did it contribute to the injury, if any, to the automobile and to Mrs. Harrell?"

Considering the state of the evidence as a whole, and the jury's answers to issues Nos. 13 and 14, we think that the jury's failure to answer issue No. 12 becomes immaterial, in determining the point now under consideration. Now, the jury just having answered issue No. 11 to the effect that Mrs. Harrell did not, in fact, see appellant's train as it approached the crossing in time to stop her automobile, and thereby prevent the accident, they were then asked, in almost immediate connection therewith:

"*Would* Mrs. Harrell, by the exercise of ordinary care, *have seen* the approaching train in time to have stopped her automobile before the same collided with said train, if she had been keeping a lookout for said train?"

And to this question the jury answered:

"Yes; she would have seen appellant's train approaching said crossing at said time, if she had been using ordinary care in keeping a lookout for said train at the time."

To our minds, the jury's answer to issue No. 13, has the clear legal effect to convict Mrs. Harrell of negligence, in that she failed to use ordinary care to discover the approach of appellant's train to the crossing where the accident occurred before she drove her car upon the track and collided with appellant's train.

We agree with the contention of appellees' counsel, to the effect that there is no statute in this state which requires one approaching a railroad crossing to stop, look, and listen, or to do either; and we also understand that the appellate courts of this state have never held that a failure on the part of one approaching a railroad crossing to stop, look, and listen, or to do either, in order to ascertain whether or not a train might be approaching, would, as a matter of law, constitute contributory negligence. But such is not the point here raised, and which we are discussing.

We understand it to be the rule in this state that all adult persons, at all times and places, are required to use at least ordinary care for their own protection and safety, and if we correctly interpret the rule, as laid down by the Supreme Court of this state in many cases, a person approaching a railroad crossing is required to use ordinary care to ascertain, by some means, whether a train might be approaching such crossing, with a view to avoiding contact with such train, and if such person about to make such a crossing, by the use of ordinary care in looking for the approach of a train to such crossing, can discover the approach of the train to the crossing in time to avoid contact and

injury therewith, and fails to use such care, and the state of the evidence be such that it must follow that such failure must be held to have caused or contributed to the injury sustained, then such person is barred from recovery on the ground of contributory negligence.

Now, while the jury found, in answer to issue No. 11, that Mrs. Harrell did not see appellant's train approaching the crossing in time to have stopped her automobile and avoid the accident, yet in the next breath the jury says that she would have discovered the approach of such train to the crossing in question in time to have stopped her automobile before it collided with appellant's train, by the use of ordinary care on her part in keeping a lookout for said train. If the jury by this finding speak the truth, and it must be so considered, then unquestionably Mrs. Harrell was guilty of negligence in driving her car upon the railroad crossing at the time she did, in that she failed to see appellant's train approaching the crossing in time to have avoided contact and injury, when she would have seen such train, had she used ordinary care to do so. We cannot understand how this finding by the jury can be susceptible of any other reasonable construction.

[6] After finding that Mrs. Harrell would, by the use of ordinary care, have seen the approaching train in time to have stopped her automobile before the same collided with said train, if she had been keeping a lookout for said train, the jury, by its next finding, said that the failure of Mrs. Harrell to keep a lookout for said train caused or contributed to her injury and that of her automobile. Appellees' counsel contend, however, that even though the jury's answer to issue No. 13 be, in effect, a finding by the jury that Mrs. Harrell was guilty of negligence, and that even though the finding by the jury to issue No. 14 was, in effect, a finding that such negligence on the part of Mrs. Harrell caused or contributed to her injury and that of her automobile, still, they contend, there is no finding by the jury that such negligence was a proximate cause, or contributed proximately to such injury, and that, without such finding by the jury, the trial court was not only not compelled, but was not authorized, to render judgment in favor of appellant, but was authorized and compelled in this case to respect the verdict of the jury, so far as it went, in favor of appellees, and that the trial court was authorized in this case, in view of the state of the evidence, to find that Mrs. Harrell's negligence, as found by the jury, if found, was not a proximate cause, or did not contribute proximately to the injury, and further contend that, not only the rule in this state compels this court to presume that the trial court found this issue in favor of appellees, since the trial court rendered judgment for appellees, but that the judgment of the trial court

conclusively shows, as a matter of fact, that the trial court did find that such negligence on the part of Mrs. Harrell, if there was such, did not proximately cause or proximately contribute to her injury, or that of her automobile, and counsel have copied in their brief a portion of the trial court's judgment, which is as follows:

"It is therefore the judgment of the court, and it is so ordered, adjudged, and decreed, upon the findings of the jury, and from the pleadings, the law, and the evidence, that the plaintiffs, C. H. Harrell and Mrs. C. H. Harrell, husband and wife, do have and recover of and from the defendant," etc.

We think that the contention of counsel for appellees, to the effect that where a jury's verdict consists of answers to special issues, and such special issues, so far as answered by the jury, are answered favorably to a party, but there yet remains one or more issues to be determined before such party would be entitled to judgment on such verdict, and the trial court renders judgment in favor of such party, it will be presumed, on appeal, that the trial court considered and determined such necessary issues, not found by the jury, in favor of such party in whose behalf the court renders judgment is correct. This presumption, we think, however, ought not and could not properly be indulged, where the evidence affords no basis or support for such a determination or finding by the trial court, and we think that in this case there was not only no basis or support in the evidence, when given a construction most favorable to appellees, to warrant the trial court in finding that Mrs. Harrell's negligence was not a proximate cause or did not proximately contribute to the injury in question, but, on the contrary, we think that the evidence on this point was such that the trial court ought to have held, as a matter of law, that Mrs. Harrell's negligence was a proximate cause or did proximately contribute to the injury in question.

Much has been said, both by elementary writers and by courts of last resort, on the subject of proximate cause; but we deem it unnecessary to enter into that field of discussion in disposing of this case, and we conclude that if Mrs. Harrell was guilty of negligence, as found by the jury, then unquestionably it must be held, as a matter of law, that such negligence was a proximate cause of or proximately contributed to her injury and that of her automobile, and therefore the trial court was in error in rendering judgment in favor of appellees, and also erred in failing and refusing to render judgment in favor of appellant. Railway Co. v. Coffee, 126 S. W. 638; Railway Co. v. Rowland, 90 Tex. 365, 38 S. W. 756; Culpepper v. Railway Co., 90 Tex. 627, 40 S. W. 386; Railway Co. v. Hubbard, 70 S. W. 112; Dowlen v. Power & Light Co., 174 S. W. 674; Railway Co. v. Missildine, 157 S. W. 245. Many other authorities of this state might be men-

tioned; but the foregoing, we think, sustain the conclusion we have reached on this point.

[7] From what has been said above, it will be seen that this court is of the opinion that the appellant was entitled to a judgment upon the jury's verdict, as rendered, and since the trial court erred in not rendering judgment upon that verdict in favor of appellant, and since it appears to this court, from the record, that the case was fully developed below, this court should render judgment in favor of appellant. The judgment of the trial court in favor of appellees will be reversed, and judgment here rendered in favor of appellant; and it is so ordered.

[8] Appellees have asked, in their brief, in the event this court should deem it proper to reverse the judgment of the trial court in this case, that then this court remand the cause for a new trial, and not render judgment here in favor of appellant, assigning as their reason for this that the court erred in submitting to the jury special issues Nos. 13 and 14, hereinbefore discussed. Appellees, at the proper time, objected to these issues, as submitted in the court's charge to the jury, and their objections thereto were overruled, and appellees duly excepted, and this action of the court is made the basis of cross-assignments by appellees.

The objections to issue No. 13, as pointed out, were: (a) Said issue as framed assumes, as a fact, that Mrs. Harrell was not keeping a lookout. (b) Because said issue required the plaintiff to exercise a higher degree of care than that of ordinary care to have discovered the train and stopped the automobile. (c) Because the same is contradictory of other issues submitted. (d) Because the same fails to have the jury find whether a reasonably prudent person, under the same or similar circumstances, in the exercise of ordinary care, would have driven across the track, as did plaintiff. (e) Because it is immaterial whether or not the plaintiff saw the approaching train, unless after seeing said train she was guilty of some act of negligence which contributed to and was the proximate cause of the injury. (f) Because the same is upon the weight of the evidence, and assumes that no lookout was kept by the plaintiff, and that, as a matter of law, if she was guilty of negligence in failing to keep a lookout, she would be barred from a recovery, without reference to whether her acts were negligence which contributed to and was the proximate cause of her injury.

And the objections to issue No. 14 were: (a) Because said issue is conditioned upon an affirmative finding to special issue 13, and such affirmative finding to said issue 13, as framed, would be wholly immaterial. (b) Because the same assumes as a fact that the plaintiff did fail to keep a lookout, and thus evades the province of the jury. (c) Because the same ignores the use of ordinary care, the same being the only degree of care im-

posed by law upon one using a public crossing. (d) Because the same assumes, as a matter of law, that a failure to keep a lookout would constitute negligence on the part of plaintiff. (e) Because it is immaterial whether the plaintiff saw the approaching train, the question being whether, after seeing the train, she was guilty of any act of which a reasonably prudent person would not have been guilty, which was the proximate cause of the injury. (f) Because the same is upon the ,weight of the evidence, and assumes that no lookout was kept by the plaintiff, and that, as a matter of law, if she was guilty of negligence in failing to keep a lookout, she would be barred from a recovery, without reference as to whether her acts were negligence which contributed to and was the proximate cause of her injury.

[9] To discuss at length these objections to the court's charge, and the assignments of error based upon the same, would serve no useful purpose, as we think, and would require this opinion to be carried to an unreasonable length. The only objection pointed out to the charge of the court, in presenting either of these issues, that could; in our opinion, be presented with any reason at all, is the objection pointed out in subdivision (f) of these objections as to both issues, to the effect that the same constituted a charge upon the weight of the evidence. We are of the opinion, however, that when the charge of the court, as framed, is considered as a whole, and especially when considered in connection with special issue No. 11 submitted by the court, these objections are untenable, or, at least, would not justify this court in holding that the error, if any, in this respect, was of such nature or materiality as to lead to the conclusion that the same was calculated to cause, and probably did cause, an unfavorable verdict by the jury regarding these issues, or that same was calculated or likely to prejudice appellees in any manner. See rule 62a for the government of Courts of Civil Appeals (149 S. W. x).

Without discussing these cross-assignments at further length, we think the same should be overruled, and that it is our plain duty to reverse the judgment of the trial court, and render judgment in favor of appellant, as we have done; and it is so ordered.