TEXAS & N. O. R. CO. v. HOUSTON UN-
DERTAKING CO. et al.   (No. 7777.)

(Court of Civil Appeals of Texas. Galveston.
Nov. 15, 1919. Rehearing Denied
Dec. 18, 1919.)

1. RAILROADS ☞348(6) — FINDING OF CON-
TRIBUTORY NEGLIGENCE OF AMBULANCE
DRIVER AT CROSSING SUSTAINED BY EVI-
DENCE.

In an action for damages to an ambulance in collision with a train at a crossing, evidence *held* sufficient to support a finding that plaintiff's driver was guilty of contributory negligence.

2. RAILROADS ☞327(1)—DRIVER OF AMBU-
LANCE GUILTY OF CONTRIBUTORY NEGLI-
GENCE AT CROSSING.

A driver of an ambulance, who failed to use ordinary care to discover the approach of a train before he drove his ambulance so near the railroad track as to render it impossible to stop and prevent the collision, was guilty of contributory negligence.

3. APPEAL AND ERROR ☞1177(8)—JUDGMENT
NOT REVERSED AND RENDERED WHERE AN-
SWERS OF JURY ARE INCONSISTENT.

In a negligence case, where the answer of the jury to one special issue was to the effect that plaintiff had not exercised due care, and the answer to another special issue was that plaintiff had exercised due care, on reversal of a judgment in favor of plaintiff the appellate court cannot render a judgment for defendant.

4. NEGLIGENCE ☞142—INCONSISTENT FIND-
INGS NOT BASIS FOR JUDGMENT.

A judgment for plaintiff should not be rendered, where the jury in answer to one special issue found that plaintiff did not exercise due care, and in answer to another special issue found that plaintiff did exercise due care; the two answers being utterly inconsistent.

Appeal from District Court, Harris County; Norman G. Kittrell, Sr., Special Judge.

Suit by the Houston Undertaking Company against the Texas & New Orleans Railroad Company, in which the Georgia Casualty Company intervened. From a judgment in favor of plaintiff and the intervener, the defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood and Mc-Means, Garrison & Pollard, all of Houston, for appellant.

Cole & Cole, of Houston, for appellees.

LANE, J. As appellant has in its brief set out a fair and comprehensive statement of the nature and result of this suit, which has the approval of appellee, we adopt the same as our own:

"Leo. H. Weadock and J. E. Price, doing business under the firm name of Houston Undertaking Company, were conducting in the city of Houston an undertaking business, and, as a part of said business, directing funerals, and also operated an ambulance for the purpose of conveying sick people to the hospitals, and similar work.

"On September 16, 1916, Leo. H. Weadock, one of the members of the firm, was driving the ambulance on Gregg street in the city of Houston, and, while crossing the defendant's railroad, the ambulance was struck with great force by an engine attached to a passenger train being operated upon the track, and practically destroyed.

"Plaintiffs brought this suit to recover the value of the ambulance, alleging that the striking of it was due to the negligence of the defendant in the following particulars:

"(1) In failing to keep a watchman at the crossing to give notice or warning to persons upon, or about to enter upon, the crossing of the approach of engines and trains.

"(2) In operating the train at an excessive speed, and in violation of the ordinances of the city of Houston limiting the speed to six miles an hour.

"The petition alleged other grounds of negligence of the defendant, but as the court did not submit them to the jury, of which no complaint is made by the plaintiffs and intervener, they are immaterial so far as this appeal is concerned, and are therefore omitted.

"Defendant answered by general denial and general plea of contributory negligence, and specially pleaded contributory negligence upon the part of the plaintiff in driving the ambu-

lance upon the track without taking any precaution by looking or listening to ascertain whether a train was approaching, and by heedlessly running upon the track at such a distance from the approaching train as to render it impossible for those operating it to stop it after they discovered the approaching ambulance and the imminent danger of a collision therewith.

"Defendant pleaded in bar that plaintiffs had transferred their cause of action to the Georgia Casualty Company, which now owned the same, and that it, only, had the right to sue therein.

"The Georgia Casualty Company intervened, setting up in substance that it had issued to plaintiffs a policy of insurance upon the ambulance; that the policy contained a clause subrogating it to any right of action that might accrue to the plaintiffs against any person causing the damage or destruction of the ambulance to the extent of the sum that it might pay to plaintiffs on account thereof; that it had paid to plaintiffs $3,000 upon the policy, and had taken an assignment of the cause of action equal to said sum; and, after adopting the allegations of plaintiffs' petition as alleging its cause of action against defendant, prayed for judgment against said defendant for said sum.

"Plaintiffs, by supplemental petition, admitted having assigned to the Georgia Casualty Company an interest in their cause of action equal to $3,000, reserving to themselves their cause of action for any excess over that sum which might be recovered, and prayed judgment for such excess.

"The case was tried before a jury, to whom it was submitted on special issues, and in answer to which issues they, by their verdict, found:

"(1) That the negligence of the defendant in running its train over six miles an hour was the proximate cause of the accident.

"(2) That the plaintiff was not propelling its ambulance at a rate of speed greater than 18 miles an hour.

"(3) That the plaintiff, on approaching the railroad crossing, could have discovered or seen, by the exercise of ordinary care, the approach of the train before it reached the crossing, in time for him to have stopped his automobile so as to have prevented the accident.

"(4) That the ambulance driven by the plaintiff at and just before the collision was operated at a speed in consideration of safety first, and at a speed no greater than was reasonable and proper, having regard to the traffic and use of the public streets and ways by others, so as not to endanger life, limb, or property of any persons using or attempting to cross said streets.

"(5) That the plaintiff exercised that measure of care that an ordinarily prudent person would have exercised under the same or similar circumstances in the matter of approaching the track and going upon the same.

"(6) That the failure of the defendant to have a flagman at said crossing was 'negligence' as that term was defined.

"(7) That such negligence was the proximate cause of the injury to said ambulance.

"(8) That the reasonable value of the ambulance at the time of the accident was $3,350.

"(9) That the plaintiff and the Georgia Casualty Company suffered damages in that amount.

"Upon return of the verdict the plaintiffs and intervener filed a motion for a judgment upon the verdict in their favor, and the defendant filed a motion for judgment upon the verdict in its favor. The court overruled defendant's motion, and granted the plaintiffs' and intervener's, and thereupon accordingly entered judgment in favor of plaintiffs for $3,000, and $340 interest, and in favor of the intervener for $150, and $17.02 interest, with interest on said sums at the legal rate, and for costs. From this judgment the defendant has appealed."

It is in effect insisted by assignments 1 and 2 that the court erred in not rendering judgment for appellants upon the answers of the jury to the special issues submitted, instead of for the appellees, and in not setting the judgment so rendered aside upon the motion of appellant, for the reason that, in answer to special issue No. 3, the jury found that, as the driver of plaintiffs' ambulance approached the railroad crossing where the alleged accident and injury occurred, he could by the exercise of ordinary care have discovered or seen the approaching train, causing the injury, before it reached the crossing and in time for him to have stopped his automobile so as to have prevented the collision which resulted in the injury complained of; and because such finding is in effect a finding that such failure to exercise ordinary care to discover said train was negligence which contributed to bring about the collision and consequent damage to plaintiffs' automobile, thus constituting contributory negligence on the part of the driver, barring the right of plaintiffs to recover.

Question No. 3 was as follows:

"Could the plaintiff, or could he not, as he approached the railroad crossing, by the exercise of ordinary care, have discovered or seen the approach of the train before it reached the crossing, in time for him to have stopped his automobile so as to have prevented the accident?

"Answer 'He could,' or 'He could not,' according as you find the fact to be."

To this question the jury answered, "He could."

[1] There was ample evidence to support the answer of the jury, and, if such answer was the only finding of the jury relative to contributory negligence on the part of the driver of plaintiffs' ambulance, we would feel constrained to sustain the assignment and reverse the judgment of the trial court and render judgment for appellant.

That the court erred in rendering judgment for appellees, in the face of the answer of the jury to issue No. 3, we have no doubt. The evidence shows that the train which collided with the ambulance approached from the east, to the right of the driver of the ambulance; that at a distance of 75 feet from the railway track, on the side from

which the ambulance approached the crossing, a train approaching from the east could be seen at a distance of 750 feet; and that one at a distance of 30 or 40 feet of such train could see the train at a much further distance. Weadock, the driver of the ambulance, testified that he did not see the approaching train until he was within 10 or 15 feet of the crossing, and that at that time the train was 50 to 75 feet from him; that at that time he was approaching the crossing at a speed of about 10 to 12 miles an hour and could have brought his ambulance to a stop within 15 to 20 feet; that when he first saw the approaching train he said to Owen M. Peterson, who was with him in the ambulance, "We are gone." He testified that he drove right on the railway track before he discovered the approaching train, and that the reason he did not stop the ambulance before he attempted to cross the railway track was because he knew the trainmen had to ring the bell and blow the whistle, and was relying on them to do so.

Owen M. Peterson, who was riding with the driver, Weadock, testified, among other things, that when he first saw the train it was about 75 to 100 feet from the point of the collision; that he could have seen the train before they drove so near the railway track, and the reason he did not see it was because he was looking to the left. In other respects this witness testified substantially as did the witness Weadock.

[2] To our minds the answer of the jury to issue No. 3 was amply supported by the evidence, and the facts thus found, together with the further fact that the driver of appellee's ambulance approached within 10 to 12 feet of the railway track before he discovered the approaching train, and that it was then impossible for him to stop the ambulance from going upon the track in front of the train which was then only 50 to 75 feet from the point of the collision, all of which was shown by the undisputed evidence, convict appellee's driver of negligence, in that he failed to use ordinary care to discover the approach of the train to the point of collision before he drove his ambulance so near the railway track as to render it impossible to stop said ambulance and prevent the collision which resulted in the damage complained of. St. Louis S. W. Ry. Co. v. Harrell, 194 S. W. 971; Ry. Co. v. Boyd, 101 Tex. 411, at page 415, 108 S. W. 813; Ry. Co. v. Dean, 76 Tex. 73, at page 76, 13 S. W. 45.

There are expressions in the opinion of the case of Railway Co. v. Harrell, supra, which are so applicable to the facts and law of this case that we shall quote therefrom at some length, as follows:

"We agree with the contention of appellees' counsel, to the effect that there is no statute in this state which requires one approaching a railroad crossing to stop, look, and listen, or to do either; and we also understand that the appellate courts of this state have never held that a failure on the part of one approaching a railroad crossing to stop, look, and listen, or to do either, in order to ascertain whether or not a train might be approaching, would, as a matter of law, constitute contributory negligence. But such is not the point here raised, and which we are discussing.

"We understand it to be the rule in this state that all adult persons, at all times and places, are required to use at least ordinary care for their own protection and safety, and if we correctly interpret the rule, as laid down by the Supreme Court of this state in many cases, a person approaching a railroad crossing is required to use ordinary care to ascertain, by some means, whether a train might be approaching such crossing, with a view to avoid contact with such train, and if such person about to make such a crossing, by the use of ordinary care in looking for the approach of a train to such crossing, can discover the approach of the train to the crossing in time to avoid contact and injury therewith, and fails to use such care, and the state of the evidence be such that it must follow that such failure must be held to have caused or contributed to the injury sustained, then such person is barred from recovery on the ground of contributory negligence."

In this cause the court defined "contributory negligence" and "proximate cause" as follows:

" 'Contributory negligence' is the want of ordinary care on the part of the person injured, that is to say, the want of such care as an ordinarily prudent person would have exercised under the same or similar circumstances, which, concurring with the negligence of the defendant, if any, proximately caused the injury.

"By 'proximate cause' is meant a cause without which the injury would not have happened, and from which that injury or some like injury might reasonably have been anticipated in the light of attending circumstances, as a natural and probable consequence."

[3] While we have reached the conclusion that the trial court committed reversible error in rendering judgment for appellees upon the answers of the jury as a whole, and in not setting aside such judgment on appellant's motion for a new trial, still we overrule the contention of appellant that judgment should have been rendered in its favor upon the answers of the jury to the special issues, because of answer to special issue No. 4, reading as follows:

"Did or did not the plaintiff exercise that measure of care that an ordinarily prudent person would have exercised under the same or similar circumstances in the matter of approaching the track and going upon the same?

"Answer 'He did,' or 'He did not,' according as you find the fact to be."

To which the jury answered, "He did," thus creating a conflict in their answers to issues No. 3 and No. 4 upon a vital point in

the case. Both answers cannot be true, for, in our opinion, the answer to one destroys the answer to the other.

We now come to the consideration of the contention made by appellant in its third and fourth assignments, which in effect is that the judgment in favor of appellees should be reversed and the cause remanded for the reason that the answers of the jury to special issues Nos. 3 and 4 are in direct conflict and inconsistent with each other, on the question of contributory negligence.

[4] We think this contention should be sustained. We think that the answer of the jury to special issues Nos. 3 and 4, as hereinbefore shown, are utterly inconsistent with each other, and that, under the rule established by many decisions of this state in such cases, no judgment should have been rendered upon the verdict. Waller v. Liles, 96 Tex. 21, 70 S. W. 17; Trice & Ludolph v. Cone, 163 S. W. 587; Ry. Co. v. Denahy, 165 S. W. 529; Ry. Co. v. Milam, 191 S. W. 571; Ry. Co. v. Walsh, 183 S. W. 19; St. L. S. W. Ry. Co. v. Harrell, 194 S. W. 971.

In the case last cited, from which we have hereinbefore quoted, the Supreme Court has granted a writ of error. Counsel for both appellees and appellant in their briefs call our attention to the fact that in granting the writ the court made upon the application a note as follows:

"Application granted. We are inclined to think that, in view of the record, the Court of Civil Appeals was in error in rendering judgment rather than remanding the case."

For the error pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.