## TEXAS & P. RY. CO. v. PERKINS.
### No. 1530—5840.

Commission of Appeals of Texas, Section A.
April 28, 1932.

Bibb & Bibb, of Marshall, and T. D. Gresham and R. S. Shapard, both of Dallas, for plaintiff in error.

Barret Gibson and Franklin Jones, both of Marshall, for defendant in error.

SHARP, J.

Claude Perkins filed this suit in the district court of Harrison county against the Texas & Pacific Railway Company for damages for personal injuries, claiming that the sight of his right eye was destroyed as a result of the alleged negligence of a coemployee. It is alleged that the cause of action arises under an act of Congress known as the Federal Employers' Liability Act (USCA, title 45, c. 2, § 51 et seq.).

The case was tried before a jury. Based upon answers made to special issues submitted to the jury, the trial court entered judgment in favor of Perkins against the railway company for the sum of $4,000. The Court of Civil Appeals at Texarkana affirmed the judg-

ment of the trial court. 29 S.W.(2d) 835. A writ of error was granted to review the opinion of the Court of Civil Appeals.

Defendant in error moves that the writ of error be dismissed because not filed in time as required by law.

The rule is now well established that the filing of an application for writ of error with the clerk of the Court of Civil Appeals within the time prescribed by article 1742, R. S., is necessary to confer jurisdiction on the Supreme Court. National Compress Co. v. Hamlin, 114 Tex. 375, 269 S. W. 1024, 1027; Tribble v. Uvalde Co. (Tex. Com. App.) 300 S. W. 23; Ladd-Hannon Oil Corp. v. Tripplehorn, 118 Tex. 195, 13 S.W.(2d) 666.

The rule is also well established by the foregoing authorities that a second motion for rehearing by plaintiff in error cannot be used to secure an extension of time to complain of rulings made on a previous motion.

In the case of National Compress Co. v. Hamlin, Judge Greenwood, in rendering the opinion of the court, reviewed the authorities bearing upon this question and clearly stated the rule to be as follows: "On the facts stated it is the settled rule that the petition filed on May 5, 1924, conferred no jurisdiction on this court. Article 1541 of the Revised Statutes requires the filing of the petition for writ of error with the clerk of the Court of Civil Appeals 'within thirty days from the overruling of the motion for rehearing.' Long v. Martin, 112 Tex. 365, 247 S. W. 827. When plaintiffs in error allowed 30 days to elapse from, not only the date of overruling their motion for rehearing, but from the date of filing of the opinion of Chief Justice Pleasants of March 6, 1924, the time had passed to invoke the appellate jurisdiction of this court to review the order refusing to grant the rehearing or any ruling embodied in Chief Justice Pleasants' opinion. Had the Court of Civil Appeals rendered any decision against plaintiffs in error on April 17, 1924, or at any other time within 30 days before they filed their petition for writ of error, of a nature subject to review by this court, a different question would be presented. This case is one where plaintiffs in error simply seek to use a second motion for rehearing as a means to secure an extension of time to complain of rulings made, not on such second motion, but on a previous motion for rehearing. A second motion cannot be used to accomplish any such end. Henningsmeyer v. Bank, 109 Tex. 116, 195 S. W. 1137, 201 S. W. 652; Vinson v. Carter, 106 Tex. 273, 166 S. W. 363; Smith v. Patton (Tex. Com. App.) 241 S. W. 109."

The Supreme Court has consistently adhered to the rules announced above. But it is contended by plaintiff in error that the facts of this case distinguish it from the facts involved in the cases upon which the foregoing rules rest. The facts are undisputed that the original opinion of the Court of Civil Appeals affirming the judgment of the trial court was dated July 10, 1930. Plaintiff in error in due time filed a motion for rehearing, which was overruled in a written opinion dated July 31, 1930. In due time, within fifteen days thereafter, defendant in error filed a motion for rehearing, which was overruled in a written opinion dated October 2, 1930. That an application for writ of error was filed by plaintiff in error with the clerk of the Court of Civil Appeals on October 31, 1930.

Article 1877, R. S. 1925, provides that: "Any party desiring a rehearing of any matter determined by any Court of Civil Appeals, may, within fifteen days after the date of entry of the judgment or decision of the court * * * file with the clerk of said court his motion in writing for a rehearing thereof. * * *"

It is plain that the Legislature in the enactment of article 1877 intended to permit any party desiring a rehearing of any matter passed upon by the Court of Civil Appeals, within fifteen days after the date of the entry of the judgment or decision of the court, to file with the clerk of the court a motion in writing for rehearing. There is no ambiguity about the words or terms used in this statute. Its meaning is clear. The court having rendered an opinion in writing on July 31, 1930, overruling plaintiff in error's motion for rehearing, defendant in error had the right, under the statute, to file his motion for rehearing and the Court of Civil Appeals clearly had jurisdiction to hear such motion, and the Court of Civil Appeals exercised that jurisdiction and wrote an opinion overruling it.

To give the construction to this article of the statute as contended for would be to compel a party to appeal by writ of error from the judgment of the Court of Civil Appeals and allege the grounds of complaint before it was definitely known just what the final judgment or decision of the Court of Civil Appeals would be. After the Court of Civil Appeals had overruled plaintiff in error's motion for rehearing, unless the court had changed its ruling in some way, a second motion for rehearing could not be filed by plaintiff in error in order to gain an extension of time. This rule is definitely settled. But the decisions do not hold that under article 1877 the defendant in error would not have the right to file a motion for rehearing complaining of the ruling of the Court of Civil Appeals and have the court pass upon it. Certainly the act of defendant in error in presenting his motion for rehearing could not be chargeable to plaintiff in error to the effect that it was seeking an extension of time. The defendant in error under the law had a right to have the errors complained of passed upon, if presented in due time, and this record shows that the Court of Civil Appeals overruled this motion for rehearing in a written opinion, dated Oc-

tober 2, 1930, and that the application for writ of error was filed by plaintiff in error within thirty days thereafter.

■ If a construction of the statute should be given as contended for, it would require a litigant to file his application for writ of error before the Court of Civil Appeals had finally acted upon the case. The law requires all errors relied upon to be incorporated in the application for writ of error, and, if not, they are waived. It would be impossible to do this until the Court of Civil Appeals had finally acted upon all motions properly and legally before it. We must assume in construing a statute that it was not the intention of the Legislature to require an impossible thing. To give the statute the construction contended for would be to deny litigants their just and legal rights and create an anomalous situation never contemplated by the Legislature. Therefore, we hold that the Supreme Court acquired jurisdiction of this case, and the motion to dismiss the application for writ of error is overruled.

■ Plaintiff in error contends that the case having been submitted to the jury on special issues, it was error to give defendant in error's special charge No. A, which was a general charge.

The court submitted to the jury special issue No. 6, which reads as follows: "Was the risk or danger, if any, of the gravel flying or bouncing when being tamped or shoveled under the ties in the manner in which you may find from the evidence that the same was being tamped or shoveled under the ties open and obvious so that the plaintiff, Claude Perkins, in the exercise of ordinary care should have known thereof? Answer 'yes' or 'no' as you find the facts to be. Answer: No."

The trial court, at the request of defendant in error, gave to the jury the following special charge No. A, which reads as follows: "To aid you in answering special issue No. 6 of the court's main charge, you are instructed that the plaintiff was not required to anticipate the negligence, if any, of Robert Smith at the time plaintiff received his injuries, but that plaintiff was entitled to rely upon Robert Smith exercising ordinary care in the manner of discharging his work unless plaintiff had actual knowledge of negligence, if any, on the part of said Robert Smith, or said negligence, if any, was so open and obvious that in discharging his duties plaintiff must have known of it and appreciated the danger arising to him therefrom in time to have avoided the consequences thereof."

The Court of Civil Appeals held that there was no error in giving special charge No. A. Article 2189, R. S., provides that when a case is submitted on special issues the court shall submit only "such explanations and defini-

tions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." The record shows that the court in his charge defined "negligence," "ordinary care," "proximate cause," "new and independent cause," and "unavoidable accident," and in addition thereto gave special charge No. A.

It is clear that the special charge given was not an explanation such as contemplated by the statute, and is not a definition. It is clearly a general charge upon the issue of assumed risk and is improper in a charge where a case is submitted to the jury upon special issues. Turner v. Missouri, K. & T. Ry. Co. (Tex. Civ. App.) 177 S. W. 204; Humble Oil & Refining Co. v. McLean (Tex. Com. App.) 280 S. W. 557, 559; Owens v. Navarro County Levee Improvement District (Tex. Civ. App.) 281 S. W. 577; Anderson & Co. v. Reich (Tex. Com. App.) 260 S. W. 162; Texas & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Worden v. Kroeger (Tex. Com. App.) 219 S. W. 1094; St. Louis S. W. Ry. Co. v. Hudson (Tex. Com. App.) 17 S.W.(2d) 793; Besteiro v. Besteiro (Tex. Civ. App.) 18 S.W.(2d) 829; Radford Grocery Co. v. Andrews (Tex. Com. App.) 15 S. W.(2d) 218.

■ In the case of Humble Oil & Refining Company v. McLean, supra, in discussing this question, Judge Harvey clearly states the rule as follows: "However, article 1984A of said Vernon's Statutes modifies the apparent effect of the provisions of article 1970 to the extent of allowing the court to 'submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such (special) issues,' whenever the case is submitted to the jury on special issues. It is obvious from a reading of these statutory provisions, that whenever special issues are submitted to the jury, a charge which undertakes to instruct the jury as to the law pertaining to any phase of the case, excepting such explanations and definitions of legal terms as are allowed by the statute, is not permissible."

In the case of Radford Grocery Co. v. Andrews, supra, the construction of the foregoing articles of the statute was before the court, and in that case Judge Critz correctly held that a charge in some respects similar to the one complained of here was error. This assignment is sustained.

■ Plaintiff in error further contends that in a case arising under the Federal Employers' Liability Act for damages sought and recovered for the physical and mental pain and decreased ability to work and earn money in the future it is error for the trial court to refuse to instruct the jury when so requested, that they must, when fixing the present value of the physical and mental suffering, and the

physical and mental suffering to be endured in the future, and the decreased ability to work and earn money in the future, discount the value of such decreased ability to work and earn money in the future and for the mental and physical suffering at such a rate of interest as the sum or value thereof could be safely and securely invested during the period for which damages are allowed.

The court submitted to the jury special issue No. 8, which reads as follows: "What amount of money if paid now in cash will fairly compensate plaintiff for the injuries he has sustained? Make your answer in dollars and cents, unless you find that the plaintiff is not entitled to any damages, in which event you will answer, 'None.'"

In explanation of the above issue, the court instructed the jury as follows:

"To aid you in answering special issue No. 8, you are instructed that you may allow such sum of money as if paid now in cash will fairly compensate the plaintiff for any time he has lost, if any, as a direct result of said injury to the date of this trial; you may also allow such a sum of money as if paid now in cash will fairly compensate him for the mental and physical suffering he has endured, if any, as a direct result of said injury, if any, to the date of this trial.

"If you find that the plaintiff's ability to work will be decreased in the future as the direct result of said injury, if any he has received, you will also allow such a sum of money as if paid now in cash will fairly compensate him therefor; and if you shall find from a preponderance of the evidence that the plaintiff will endure mental and physical suffering in the future as the direct result of said injury, if any he has received, you will also allow such a sum of money as if paid now in cash will fairly compensate him therefor, and make the total amount, if any, so found by you in your answer to this question."

The plaintiff in error requested the following special charge, which was refused by the court: "In connection with special issue No. 8, you are instructed that should you find in favor of the plaintiff and allow the plaintiff damages in answer to such question, then the amount allowed for any decreased ability to work and earn money in the future, if any, and the amount allowed for physical and mental suffering, if any, should be such amount as is the present value thereof, and in determining the present value thereof, you should take into consideration the rate of interest at which money can be safely and securely invested and determine the present value of any amount you may so allow by discounting the same or deducting therefrom annually an amount equal to the rate of interest at which such sum could be safely and securely invested during the period for which you may allow such damages, and make the balance your answer." In support of this contention the following authorities are cited: Gulf, Colorado & Santa Fe Ry. v. Moser, 275 U. S. 133, 48 S. Ct. 49, 72 L. Ed. 200; Chesapeake & Ohio Ry. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367; Chesapeake & Ohio R. Co. v. Gainey, 241 U. S. 494, 36 S. Ct. 633, 60 L. Ed. 1124.

This is a federal question, and the rule announced by the authoritative federal decisions controls. The Supreme Court of the United States holds that in awarding damages for death under the Federal Employers' Liability Act the jury must determine the present value of the pecuniary loss calculated as bearing interest at the highest net rate that can be had on money safely invested. In the case of Gulf, C. & S. F. Ry. Co. v. Moser, 275 U. S. 133, 48 S. Ct. 49, 72 L. Ed. 200, where special issues were submitted to the jury, as was done here, the following special instruction was refused: "In considering of your verdict on the question of damages, and under the special issues submitted to you in that connection, and thereunder in determining 'such sum of money as if paid in cash at this time would be sufficient to fairly compensate the surviving wife and child,' for their pecuniary loss, you are instructed that in determining the present value of such contributions as plaintiff would probably have received from the continued life of the deceased you will make your calculations on the basis of the amount of your award, bearing interest at the highest net rate of interest that the testimony shows can be had on money safely invested, and secured as shown by the testimony in this case." The Supreme Court of the United States, in passing upon this question, held:

"This action sufficed to raise the point now presented. Refusal to grant the request was material error.

"Chesapeake & O. R. Co. v. Kelly, 241 U. S. 485, 491, 60 L. Ed. 1117, 1122 [L. R. A. 1917F, 367], 36 S. Ct. 630 [13 N. C. C. A. 673], and Chesapeake & O. R. Co. v. Gainey, 241 U. S. 494, 60 L. Ed. 1124, 36 S. Ct. 633, announce the applicable rule. In the first, we distinctly stated that: 'In computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.' The interpretation approved by us has become an integral part of the statute. It should be accepted and followed."

This assignment must be sustained.

■ **Plaintiff in error** also contends that the defendant in error, as a matter of law, assumed the risk of injury in this case, and that the trial court should have instructed a verdict in favor of plaintiff in error. A peremptory instruction was requested by plaintiff in error, which was refused.

In substance the testimony shows that Perkins was an experienced section man and was familiar with the kind of work he was called upon to perform. He and Robert Smith were both section men and were engaged in tamping or shoveling washed gravel or ballast under the ties and rails and between the ties and rails of the railroad track, one of them being on one side of the cross-ties and the other on the opposite side. While they were in this position, and after Smith had finished tamping or shoveling gravel on his side of the ties and had tamped or shoveled gravel up along the side of the ties until it was almost to the top thereof, and while Perkins on the opposite side had not finished tamping or shoveling gravel, but was still doing so, it seems Smith's shovel turned in his hand, causing him to make an awkward lick, and some gravel flew up, and Perkins said: "Look and see what is this in my eye." In making the awkward lick Smith's shovel struck the tie and the gravel flew up. The testimony further shows that gravel had to be shoveled under and around the ties pretty hard to stay there and hold up the railroad track. It was usual and customary to push it under the ties and put it in there hard and tamp it hard to hold up the ties. It was part of Smith's and Perkins' business as section hands to tamp or push the gravel under the ties hard enough to hold them up. It was usual and customary in doing that to use all their force to pack it under the ties.

The testimony further shows that section men were all working "under speed," and that Smith had gravel on his side of the ties to within about three inches from the top. The testimony further showed that Perkins was aware that perhaps at times gravel would fly, but had never seen anyone hit in the eye before.

Perkins in substance further testified that "if you strike the ties with a shovel it will make the gravel fly, but not high"; that he never had any gravel fly up and hit him in the face before this, not by catching in the shovel; that if a person takes a pick and strikes with force it will fly up; that gravel occasionally will fly up around your knees and body, but he never had before been hit in the face with any.

■ **This contention** presents a serious question. Congress has seen fit to legislate upon the liability of railroad companies to their employees while engaged in interstate commerce. When Congress occupies a certain field of legislation, all local or state laws upon that subject are superseded. The rules with respect to this matter announced by the state courts become immaterial. The Federal Employers' Liability Act (45 USCA § 51 et seq.) gives to railroad companies the right to plead the defense of assumption of risk. This rule has been repeatedly announced by the Supreme Court of the United States. The rule announced by that court is supreme and will be enforced without regard to the views of the courts of the state in which the action is brought. Chesapeake & O. Ry. Co. v. Kuhn, 284 U. S. 44, 52 S. Ct. 45, 76 L. Ed. ——; Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 57, 58, 32 S. Ct. 169, 56 L. Ed. 327, 349, 350, 38 L. R. A. (N. S.) 44.

In the case of Chesapeake & O. Ry. Co. v. Kuhn, supra, after setting out the testimony in that case, which is substantially similar to the facts involved in this case, the court held:

"We think the evidence clearly discloses that Kuhn's injury resulted from the ordinary hazards of his employment, which he fully understood, and voluntarily assumed. There was no complaint, no promise by his superior to mitigate the obvious dangers. The trial judge should have directed a verdict for the railway company.

"In cases like this, where damages are claimed under the Federal Employers' Liability Act (45 USCA §§ 51–59), defense of the assumption of the risk is permissible and where the undisputed evidence clearly shows such assumption the trial judge should direct a verdict for the defendant. Moreover, in proceedings under that act, wherever brought, the rights and obligations of the parties depend upon it and applicable principles of common law as interpreted and applied in the federal courts. Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 508, 58 L. Ed. 1062, 1071, L. R. A. 1915C, 1, 34 S. Ct. 635, Ann. Cas. 1915B, 475 [8 N. C. C. A. 834]; Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 60 L. Ed. 1016, 36 S. Ct. 564; Boldt v. Pennsylvania R. Co., 245 U. S. 441, 445, 62 L. Ed. 385, 389, 38 S. Ct. 139 [19 N. C. C. A. 461]; New Orleans & N. E. R. Co. v. Harris, 247 U. S. 367, 371, 62 L. Ed. 1167, 1170, 38 S. Ct. 535; Chicago, M. & St. P. R. Co. v. Coogan, 271 U. S. 472, 474, 70 L. Ed. 1041, 1043, 46 S. Ct. 564."

In 20 Ruling Case Law, § 23, p. 30, the general rule of negligence is stated in the following language: "The common experience of mankind is the criterion for determining what cautionary measures shall be taken to avoid injury to others. Everyone may rightfully rely upon experience, and as a rule he is not to be charged with negligence in respect of acts which conform to a practice that has existed for years without resulting in any injury."

Under the rule announced by the Supreme Court of the United States in the Kuhn Case, supra, we are constrained to hold that upon another trial, if the evidence introduced is not strengthened, but is practically the same as it was at the prior trial, as reflected in this record, it will be the duty of the trial court to instruct a verdict for the railway company.

We recommend that the judgment of the trial court and the Court of Civil Appeals be reversed, and the cause be remanded to the district court for another trial in accordance with this opinion.

CURETON, C. J.

Judgments of the Court of Civil Appeals and district court reversed, and cause remanded to the district court.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.