**TEXAS & PACIFIC RY. CO. v. FOSTER et al.**

**No. 1037.**

Court of Civil Appeals of Texas. Eastland.

Jan. 27, 1933.

Rehearing Denied March 31, 1933.

H. C. Shropshire, of Weatherford, for appellant.

Turner, Seaberry & Springer, of Eastland, for appellees.

LESLIE, Justice.

The plaintiff Minnie L. Foster, for herself and as next friend of four minor children, filed this suit against the Texas & Pacific Railway Company to recover damages by reason of the death of the husband and father, J. D. Foster, who was run over and killed by the defendant's train at a country public road crossing. The deceased was in a Ford car driven by his son, and, as they attempted to make the crossing, the car was centrally struck by a passenger train traveling at approximately the rate of 65 miles per hour. Negligence is alleged to consist in running at an excessive rate of speed at the time and place of the injury, failure to maintain a watchman or some warning device at the crossing, alleged to be extrahazardous and dangerous, and discovered peril. Among other defenses, the company alleged general and special denials, contributory negligence, and that the facts generally alleged by the plaintiff did not warrant a recovery against it, as it was at the time of the accident engaged in interstate commerce, etc. Trial was before the court and jury, and, upon the answers to numerous special issues, a judgment was rendered in favor of the wife and minor children aggregating the sum of $12,392. As to the other plaintiffs, judgment was in favor of the company. The defendant appeals and predicates error on sixty-eight assignments and as many propositions.

The many propositions, when grouped, relate to about five controlling questions. Briefly these questions are: (1) Does the evidence support the verdict of the jury in finding that the crossing was more than ordinarily hazardous and dangerous? (2) Does it support the verdict to the effect that the company was guilty of negligence in failing to keep a watchman or maintain some device other than a signboard for the purpose of warning persons about to use the crossing of the approach of trains? (3) Does the testimony support the verdict to the effect that the company was guilty of negligence in operating its train at a dangerous rate of speed at the time and place of the accident? (4) Whether or not the evidence supports the verdict of the jury upon the question of discovered peril. And (5) whether or not the jury was guilty of misconduct.

At the conclusion of the testimony, the defendant requested a peremptory instruction on the ground that the uncontradicted evidence convicted deceased Foster of contributory negligence in attempting to make the crossing with full view and knowledge of the approaching train. To set out the testimony on this issue would unduly lengthen the opinion. We have, however, carefully considered the same, and conclude that the proposition should be overruled. Undoubtedly the testimony as a whole presents a jury case, and the remaining issues will be considered on that theory.

■ Since the case was submitted to the jury on special issues, and the defendant's specially requested charges 4, 7, and 11 were general charges on the law of the case, the court did not err in refusing to give them. Wichita Valley Railway Co. v. Brown (Tex. Civ. App.) 274 S. W. 305; Texas & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Fort Worth & D. C. Ry. Co. v. Morrow (Tex. Civ. App.) 255 S. W. 674; Solo Serve Co. v. Howell (Tex. Civ. App.) 35 S.W. (2d) 474; Texas & P. Ry. Co. v. Perkins (Tex. Com. App.) 48 S.W.(2d) 249; Id. (Tex. Civ. App.) 29 S.W.(2d) 835.

■ By proposition 5, complaint is made that the trial court erred in refusing to give the defendant's special charge 24, instructing the jury not to consider certain testimony alleged to be prejudicial, in that it impeached the defendant's witness Bowles, on "a collateral and immaterial issue." No objection was made to the testimony when given. We doubt that the testimony was improper, but, if it were, the objection in the nature of a charge to the jury came too late. Such is the holding of our Supreme Court in Missouri Pac. Ry. Co. v. Mitchell, 75 Tex. 77, 12 S. W. 810, followed in Missouri, K. & T. Ry. Co. v. Edling, 18 Tex. Civ. App. 171, 45 S. W. 406.

■ The sixth proposition is based upon the refusal of the court to give special charge No. 25, designed to withdraw certain testimony, to the admission of which no objection had been made. As to this point, the record is in the same condition as noted in disposing of proposition 5. Further, the transcript does not disclose that the court gave or refused special issue No. 25. The charge bears no indorsement of the trial judge, and his ruling is in no way authenticated. Article 2188, R. S. 1925; Farmers' & Merchants' State Bank v. Guffey (Tex. Civ. App.) 255 S. W. 462; Walker v. Hirsch Cooperage Co. (Tex. Com. App.) 236 S. W. 710; Medford v. Kimmey et ux. (Tex. Civ. App.) 298 S. W. 140; Hawkeye Securities Co. v. Cashion (Tex. Civ. App.) 293 S. W. 664 (11); 3 Tex. Jur. p. 234, § 161, p. 587, § 410.

■ The defendant's specially requested issues 21 and 22 were substantially covered by the main charge, and there was no error in refusing them. Texas & P. Ry. Co. v. Baldwin (Tex. Civ. App.) 25 S.W.(2d) 969; Harding-Gill Co. v. Borchardt (Tex. Civ. App.) 285 S. W. 698; Gulf, C. & S. F. Ry. Co. v. Farmer, 102 Tex. 235, 115 S. W. 260; Dallas Ry. & Terminal Co. v. Fuchs (Tex. Civ. App.) 52 S.W.(2d) 685; American Asphalt Co. v. O'Rear (Tex. Civ. App.) 41 S.W.(2d) 322; Id. (Tex. Civ. App.) 36 S.W.(2d) 779.

The defendant has presented propositions 9, 10, 14, 15, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 43, 44, and 66 in several groups, and the plaintiff replies to them as a single group and on the theory that they are but repetitions of the points raised by the defendant's first assignment of error and relating merely to matters of pleading and testimony. Omitting propositions 23, 24, 25, 26, and 27, which relate to the liability on the ground of discovered peril, we believe the plaintiff's assumption to be substantially correct. Each of these propositions predicates error on the part of the court in making certain rulings without pleading or evidence to justify the same. Since such contentions involve elementary principles of law, we shall not lengthen this opinion by a restatement of the same and their application to this record. Such would not be of interest to others than the litigants, and in their behalf we content ourselves by making specific rulings to the effect that we find the pleadings and testimony sufficient in each respect complained of.

■ We omitted propositions 23 to 27, both inclusive, from the above grouping, for the reason that we are not in accord with the plaintiff's contention on the question of discovered peril. The jury found that the deceased (1) was in a perilous position prior to the collision; (2) that the operators of the train discovered this perilous position; (3) that they discovered it in time to have avoided the collision by the use of all the means at hand consistent with the safety of the train and its occupants; (4) that, under such circumstances, the operators of the train, in the exercise of ordinary care "failed to use all the means at hand consistent with the safety of said train and its occupants to prevent the collision and injuries in question"; and (5) that such failure was the proximate cause of the collision and injuries. The sufficiency of the pleadings and the evidence to sustain these findings is challenged. We sustain the propositions on the question of evidence. We will make no extended statement of the testimony, but refer to some of its important features which have a bearing, not only on this particular question, but also on the closely related one of excessive and dangerous rate of speed at the time and place of the collision.

The train on this occasion was the well-known Sunshine Special, made up of five Pullmans and three coaches, each about 90 feet in length. The locomotive was of the 900 class, and one of the largest for passenger trains. It was 95 feet in length, including the tender, and weighed 820,000 pounds. It was capable of running 110 miles per hour, but the operators were limited to 65 miles per hour. The locomotive was 12 feet from the cab to the ground, equipped with modern appliances enabling the engineer to stop the train, as in the present case, in a space of about 400 yards from the time the brakes were properly applied. From the point of collision to the east, the track was practically straight for one and a quarter miles, with a 1 per cent. down grade in the direction the train was running. The automobile was approaching

the crossing from the northeast, or at an angle of about 40 degrees, rather than in a line perpendicular to the railroad track. The approaching train was thus to the rear of the left shoulder of the deceased and the driver of the automobile, which was a model T Ford. The engineer testified that he saw the automobile approaching when it was 75 to 100 feet from the crossing, at which time the engine was also 80 to 100 feet from the same; that he blew the whistle and the automobile slowed down to 2 or 3 miles per hour near the crossing, possibly in 10 feet of it; that somewhere near the crossing the automobile suddenly speeded up, at which time (the train being in about 100 feet of the crossing and running approximately 65 miles per hour), he threw on the brakes, which, as applied, brought the train to a stop in about 400 yards. These circumstances, in connection with the further finding of the jury, in answer to special issue No. 1 requested by the defendant, that the deceased, in approaching the crossing and at a point not nearer than 30 feet of the track, reduced the speed of the automobile to a speed not exceeding 6 miles per hour, lead us to the conclusion that we would not be warranted in holding that deceased was in a perilous position, or that the operators of the train discovered him in such position until after it was too late for them, by the use of the means at hand, to prevent the collision. To hold otherwise would, in effect, require the operators of such trains to slow up or stop every time they saw an automobile approaching a railroad track in the manner of this one, and that quite without regard to its speed when discovered, or its proximity to the crossing. Texas & N. O. Ry. Co. v. Wagner (Tex. Civ. App.) 262 S. W. 902; Crews v. Schaff (Tex. Civ. App.) 250 S. W. 749; Pillow v. Texarkana & Ft. S. Ry. Co., 55 Tex. Civ. App. 597, 119 S. W. 128; Houston & T. C. Ry. Co. v. O'Donnell, 99 Tex. 636, 92 S. W. 409; Texas & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410.

▮ In connection with the foregoing testimony and upon the question of liability of the defendant by reason of excessive speed at the time of the collision, the testimony as a whole discloses that the public road and crossing in question were commonly used. In approaching this crossing from the east, the undisputed testimony is that the train emerged from a cut in close proximity to the crossing. The distance from the crossing to the nearest end of the cut and the depth of the cut are variously stated by the different witnesses. In fact there is a great variety of testimony concerning the cut, the nature of the road as it approaches the crossing; and the obstructions possibly preventing those in the automobile from discovering the approaching train; and vice versa. There is testimony that the west end of the cut is within 10 steps of the crossing and 4 feet deep. There is other testimony that the west

end of the cut extends "to about 100 feet from the crossing" and is 5 or 6 feet deep. Others give the distance between the two points as still greater. One witness testified that the cut was 20 to 30 feet deep; another, 25 feet deep; another, 7 feet deep; another, almost deep enough to hide the train, etc. There was considerable testimony that live oak trees and brush obstructed the view between the approaching train and the automobile immediately before reaching the crossing. Some of the testimony was to the effect that, standing on the crossing, the train could be seen approaching from the east for a mile or two, while, standing in 15 or 20 feet of the track to the north of the same, the train could not be seen coming "more than 125 or 150 steps." Others testified it as much as 250 yards away, and the testimony varied as much on this point as on the depth of the cut. The testimony relating to the rocks, rough places, and mudholes at the crossing, and especially in close proximity to the right of way, varied likewise. Of like nature was the testimony pertaining to the nature of the ground surrounding the crossing, the alleged dangerous rate of speed, and the circumstances rendering the crossing hazardous. Such testimony supports the verdict of the jury finding the defendant guilty of negligence in operating the train at a high rate of speed at the time of the collision. Smith v. Galveston-Houston Elec. Ry. Co. (Tex. Com. App.) 277 S. W. 103; Galveston, H. & S. A. Ry. Co. v. Wells (Tex. Sup.) 50 S.W.(2d) 247, and authorities therein cited.

▮ Further, there is some testimony to support the finding of hazardous crossing and the alleged negligence upon the part of the defendant in not maintaining some device, other than a signboard, for the purpose of warning those about to pass over the crossing of the approach of trains.

▮ Propositions 41 and 42 raise the question of the excessiveness of the verdict. It was for $12,000, apportioned $6,000 to the widow, $400 to 19 year old boy, $1,200 to 14 year old daughter, $2,000 to 12 year old son, and $2,400 to 5 year old boy. We have reviewed the testimony. The deceased was a man 52 years of age, had an expectancy of 18 years, combined the occupations of a farmer and carpenter, was in good health and industrious. He left a wife and four minor children, ranging in ages from 5 to 19 years. He evidently supported the family in the usual and customary manner of a citizen in that station of life. The question of excessiveness of a verdict in this kind of a case is always a difficult one. It cannot be known that any conclusion is exactly correct. There is much left to the judgment of the jury upon an issue of this nature, and, believing the verdict of the jury to be amply supported by the testimony, these propositions are overruled. Chicago, R. I. & G. Ry. Co. v. Car-

ter (Tex. Civ. App.) 250 S. W. 192; Baker v. Harmon (Tex. Civ. App.) 254 S. W. 517; International Great Northern Ry. Co. v. Smith (Tex. Civ. App.) 269 S. W. 886; Texas & N. O. Ry. Co. v. Crow (Tex. Civ. App.) 300 S. W. 93.

By the sixty-fifth proposition the defendant contends that there is such conflict in the jury's findings in response to issues 25 and 26, prepared and submitted by the defendant, that there is no basis in, the verdict for a judgment in favor of the plaintiff, and that the case at least should be reversed and remanded for another trial. Issue 25, requested by the defendant, reads: "Do you believe from the evidence J. D. Foster, deceased, in approaching the railroad crossing and before driving thereon, by the exercise of ordinary care under all the then existing circumstances, could have seen or heard the train as it approached said crossing, in time to have stopped his automobile and thereby have prevented the accident? Answer Yes or No. Answer Yes."

Special issue 26, likewise requested, reads: "If you have answered Special Issue No. 25, requested by the defendant, in the affirmative, then you will answer: Was J. D. Foster, deceased, guilty of negligence as defined by the court in failing to see or hear the approaching train in time to stop his automobile before going upon the track and crossing? Answer Yes or No. Answer No."

Issue 26 being answered in the negative, the jury was instructed not to answer 27, which called for a finding on proximate cause in connection with issue 26.

Issue 25 and its affirmative answer clearly mean that, under the circumstances, it would be negligence for the deceased not to have seen and heard the train in time to stop and prevent the accident. Issue 26 and its answer mean, under the same circumstances, it would not be negligence on the part of the deceased in failing to see and hear the train in time to stop, etc. Obviously these findings are in conflict and are mutually destructive of each other. Texas & N. O. Ry. Co. v. Houston Undertaking Co. (Tex. Civ. App.) 218 S. W. 84 (writ refused). The answer to issue 25 convicted the deceased of contributory negligence, and the answer to 26 acquitted him thereof. This left the verdict without a finding on that phase of the case.

In deciding this question of conflict, we understand the rule to be that all the issues must be considered together as a whole, and if, when so considered, they admit of more than one reasonable construction, the trial court has power to apply that construction which he deems proper. Southwest Bitulithic Co. v. Dickey (Tex. Civ. App.) 28 S.W.(2d) 264, 266 (4). In such a case it would be the duty of the court to uphold the judgment. It is also well understood that it

is the court's duty to reconcile apparent conflicts in the answers of the jury to special issues, if it can be reasonably done in the light of the pleadings and the evidence. Graham v. Hines (Tex. Civ. App.) 240 S. W. 1015. To uphold the judgment, we have endeavored to apply these rules, but the record forbids their application with that result.

Issues 25 and 26, with their respective answers, do not find that the deceased in fact saw and heard the train, and they can only be reconciled on the theory that the deceased, in approaching the crossing, heard and saw the approaching train. If he did so see and hear the train as he approached the crossing, there would remain the open question as to whether or not an ordinarily prudent person, situated as he was, would not have attempted to make the crossing under all the circumstances, and especially in view of the condition of the crossing, proximity and speed of the train, as well as his own nearness thereto, etc. Trochta v. M., K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038 (5 and 6); Freeman v. G., H. & S. A. Ry. Co. (Tex. Com. App.) 285 S. W. 607–609.

However, the theory that the plaintiff saw and heard the approaching train cannot be adopted, since it is in conflict with the theory of negligence upon which plaintiff seeks to fix the defendant's liability; that theory being that the deceased did not and could not see and hear the approaching train in time to prevent the accident, since the train approached the crossing at an excessive speed through a deep cut, which, together with obstructions, etc., near the track, prevented his seeing and hearing the approaching train. The plaintiff alleged, among other things, "that a train approaching from the east cannot be seen until one is upon the defendant's right-of-way." Paragraph 6. "That due to the location of said public road and the surrounding terrain it would be difficult for persons passing over said crossing to observe the approach of fast moving trains." Paragraph 8. "That said train approached John D. Foster slightly to his rear; that as said train approached it passed through a cut approximately 600 yards in length and 20 feet deep; that the west end of said cut is approximately 300 feet from said crossing; that to the east of said highway at the intersection of the public road and the right-of-way of said railroad there are some large liveoak trees; that the vision of said John D. Foster was obstructed as he looked toward the east by said cut and the earth that was removed from said cut and piled along defendant's right-of-way, as well as said liveoak trees. * * * That said John D. Foster's vision was obstructed so that he could not see the approach of said train until after he had reached the defendant's right-of-way and was in the act of crossing said railroad track; that as a result thereof he could not see defendant's locomotive and know and

562

realize the danger that he was in." Paragraph 9.

Considered aside from the question of discovered peril, these excerpts indicate plaintiff's theory of recovery, and the allegations in another portion of the pleadings that the defendant's track was straight for one and a half miles and "vision unobstructed" is, if anything, a conflict in the allegations, the effect of which we need not here consider. Further, the pleadings are not in the alternative.

Therefore, since the case does not proceed on the theory that the deceased saw and heard the approaching train, and since the findings in response to issues 25 and 26 cannot be reconciled in any other way, it follows that that portion of the verdict fails, and, as stated, there remains no finding on contributory negligence.

Further, if it be conceded that the deceased saw and heard the approaching train, there would at once be eliminated from further. consideration negligence based upon (1) failure of operators of the train to blow the whistle; (2) to keep lookout; (3) maintain signal, other than crossing signs, at the crossing; (4) .extrahazardous crossing; and (5) possibly dangerous and high rate of speed. It is elementary that it avails nothing to warn of such a situation fully known and comprehended by the injured party.

The defendant insists there are numerous other conflicts and much confusion resulting from the jury's verdict in response to other issues specially requested by it and given to the jury. The defendant has, by its brief and in connection with its discussion of the conflict resulting from the answers to 25 and 26, directed our attention to the answers of the jury to such issues and answers. We have carefully examined the contentions. Undoubtedly there are several conflicts and more or less confusion resulting in the answers given to these issues. In each instance the reason is obvious, for, as was the case with issues 25 and 26, other issues presented to the jury either the same or substantially the same issue, couched in different language, thus making it easy for conflict and confusion to creep into the verdict. Many of the defendant's specially requested issues were multifarious. Many of them called for a finding in one issue (1) on the existence of the facts upon which negligence is predicated; (2) whether such facts constituted negligence; and (3) whether such negligence was proximate cause of injury. Some of these issues assumed as true controverted and material facts. Except on matter of conflict alleged, some of these observations are not in response to questions raised, but they are suggested by the record and are made in the interest of accuracy on another trial.

Proposition 67 presents a question of misconduct of the jury in four different respects: (1) That the jury first determined to decide the case for plaintiff and then answer the issues accordingly; (2) that during the deliberations of the jury one of the jurors gave the jury the benefit of his personal knowledge of the crossing with reference to its being a dangerous one, and that such information influenced the decision of the jury; (3) that the question of attorney's fee was discussed and considered by the jury and the amount of the judgment improperly influenced thereby; and (4) that the amount of damages was arrived at by lot. Four of the twelve jurors were called by the defendant to give testimony in support of such allegations. A thorough examination was given the witnesses, and, while it is believed that some of the contentions are without any support in the testimony, nevertheless the most that can be said in respect to each issue is that the testimony is conflicting. The trial court has resolved the testimony against the occurrence of any such misconduct, and it is the duty of this court to sustain the ruling. The following authorities illustrate the application, of the rule where the evidence conflicts as to the existence of misconduct. One or more of these authorities have application to the particular contentions above made. Monkey Grip Rubber Co. v. Walton (Tex. Com. App.) 53 S.W.(2d) 770; Bradley v. T. & P. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861; Goodrich v. Pandem Oil Corp. (Tex. Com. App.) 48 S.W. (2d) 606; Harwell v. Reed (Tex. Civ. App.) 50 S.W.(2d) 415; Dallas Ry. & Terminal Co. v. Garner (Tex. Civ. App.) 42 S.W.(2d) 665; St. Louis, B. & M. Ry. Co. v. Cole (Tex. Com. App.).14 S.W.(2d) 1024; Bradshaw v. Abrams (Tex. Com. App.) 24 S.W.(2d) 372; Galveston, H. & S. A. Ry. Co. v. Cook (Tex. Civ. App.) 214 S. W. 539; Estep v. Bratton (Tex. Civ. App.) 24 S.W.(2d) 465. This proposition is overruled.

For the reasons assigned, the judgment of the trial court is reversed, and the cause remanded.

### On Rehearing.

In the appellees' motion for rehearing, they make the point that issue 25, given at the request of appellant, embraced no finding of proximate cause, as held by us, and they cite for support of that contention Houston & T. C. Railway Co. v. Kelley, 13 Tex. Civ. App. 1, 34 S. W. 809, 46 S. W. 863; Missouri, K. & T. Ry. Co. v. Rogers, 91 Tex. 52, 40 S. W. 956; Gulf, C. & S. F. Ry. Co. v. Mangham, 29 Tex. Civ. App. 486, 69 S. W. 80; Galveston, H. & S. A. Ry. Co. v. Pendleton, 30 Tex. Civ. App. 431, 70 S. W. 996; San Antonio & A. P. Ry. Co. v. Votaw (Tex. Civ. App.) 81 S. W. 130; Texas Portland Cement Co. v. Lee, 36 Tex. Civ. App. 482, 82 S. W. 306; Gulf, C. & S. F. Ry. Co. v. Melville (Tex. Civ. App.) 87 S. W. 863.

We have examined these authorities. Gulf, C. & S. F. Railway Co. v. Melville lends most support to appellees' contention, but, if that opinion should be considered in point, then we think the later case of Texas & N. O. Ry. Co. v. Houston Undertaking Co., 218 S. W. 84, by the same court, and in which a writ of error was refused, should be held to rule this case. No writ of error seems to have been applied for in the Melville Case. We think that the opinion in Texas & N. O. Ry. Co. v. Undertaking Company requires the construction which we have placed in our original opinion upon the jury's findings in response to issues 25 and 26, respectively.

■ On the question of discovered peril, we adhere to the views originally expressed. A careful consideration of the testimony, which comes mainly if not entirely from the appellees' witnesses, establishes, we think, that the appellant or its agent, after discovering the peril of the deceased, did all that an ordinarily prudent person could have done under the circumstances to avert the collision. This necessarily implies that the engineer, after the discovery of the peril, made such use of the means and facilities at hand to avert the collision as the law required.

■ We are requested to make additional conclusions of fact from the record. We are of the opinion that we have stated a conclusion upon every fact material to the issues, as the jury were warranted by the evidence in finding them, and do not think it would be proper to incumber the record with the evidence in detail. Such findings would not be controlling, but merely evidentiary. 3 Tex. Jur. p. 1120, § 785.

The motion for rehearing is overruled.

FUNDERBURK, Justice (concurring).

I concur in the opinion of the majority. The import of the jury's verdict upon special issue No. 25 as including the element of proximate cause can better be seen by abbreviating the issue, as follows: "Do you believe * * * J. D. Foster, deceased, in approaching the railroad crossing and before driving thereon, by the exercise of ordinary care, under all the existing circumstances, could have seen or heard the train as it approached said crossing * * * and have prevented the accident?" But, if we should be mistaken in the view that said issue included a finding of proximate cause, then nevertheless the issue as answered, when supplemented by what must be regarded as an undisputed fact, since it was alleged by plaintiffs and was the basic fact upon which the findings of the defendant's negligence was found, namely, that deceased did not see or hear the train in time to stop and thereby have prevented the accident, constitutes a finding of negligence of such nature under the undisputed facts of the case as to be the proximate cause as a matter of law. Proximate cause, like any other fact, is an issue for a jury only when there is a dispute as to the facts or reasonable minds may draw different inferences from the facts. I am of opinion that if, as found by the jury, in addition to the undisputed fact that deceased did not see or hear the train, and did not stop and prevent the accident, the deceased was guilty of negligence, then reasonable minds cannot differ upon the proposition that such negligence was the proximate cause of the accident. Texas & P. Ry. Co. v. McCoy, 90 Tex. 264, 38 S. W. 36; Gulf, C. & S. F. Ry. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756; Culpepper v. I. & G. N. Ry. Co., 90 Tex. 627, 40 S. W. 386; Parks v. S. A. Traction Co., 100 Tex. 222, 94 S. W. 331, 98 S. W. 1100; St. Louis S. W. Ry. Co. v. Harrell (Tex. Civ. App.) 194 S. W. 971; Chicago, R. I. & G. Ry. Co. v. Coffee (Tex. Civ. App.) 126 S. W. 638; Coffee v. C., R. I. & G. Ry. Co., 104 Tex. 127, 134 S. W. 1174; Dowlen v. T. P. & L. Co. (Tex. Civ. App.) 174 S. W. 674; St. Louis S. W. Ry. Co. v. Missildine (Tex. Civ. App.) 157 S. W. 245.