**DALLAS RY. & TERMINAL CO. v. GLENN.**

No. 12878.

Court of Civil Appeals of Texas. Dallas.

Oct. 12, 1940.

Rehearing Denied Nov. 23, 1940.

Burford, Ryburn, Hincks & Charlton, of Dallas, for appellant.

Carden, Starling, Carden & Hemphill and L. R. Garrish, all of Dallas, for appellee.

BOND, Chief Justice.

This suit was instituted in a district court of Dallas County by appellee, Mrs. Evelyn Glenn, against Dallas Railway & Terminal Company, to recover damages for personal injuries, and to an automobile driven by her, as the result of a collision with appellant's street car.

The trial was to a jury, and resulted in favor of plaintiff on all issues of ordinary negligence, on defendant's failure to exercise ordinary care in the particulars alleged in plaintiff's petition; but, which findings were effectually rendered nugatory by subsequent findings that plaintiff was guilty of contributory negligence. The jury also found in favor of plaintiff on proper issues of "discovered peril" and assessed damages at $5,210. Thus, all acts of ordinary negligence committed by defendant's street car operator are rendered immaterial on this appeal, and no issue relative thereto is here presented. The appeal is relegated entirely to the issues of "discovered peril".

It is elementary that a jury is the judge of the weight of all the evidence in all cases presenting ultimate issues of fact, but it cannot lawfully deny proper weight to undisputed facts, with no suspicion cast upon them; or arbitrarily reject evidence; or, in the absence of evidence, sustain issues

which are improperly submitted. In sustaining the issues on "discovered peril", the case must present evidence that, when considered in the light most favorable to the findings of the jury, raises the issue and supports the findings. The uncontradicted evidence, or the lack of evidence, in this respect demands peremptory instruction, or, on motion, judgment non obstante veredicto. Therefore, the ultimate question for decision in the instant case is: Does the evidence show that the street car motorman, on the occasion in question, failed to use all the means at his command, consistent with his own safety and the safety of the street car, to prevent collision with plaintiff's automobile after it was discovered on or near the street car track, and plaintiff's perilous position realized? If such is shown, the verdict of the jury on such issues should not be disturbed on appeal; on the other hand, if the evidence is insufficient to support the findings of the jury, then defendant's motion for peremptory instruction, and for judgment notwithstanding the verdict, should have been sustained. Therefore, error is here presented, enjoining this Court to search the record for evidence to sustain the findings of the jury, and to render such judgment as was, or should have been, rendered in the court below.

■ Plaintiff's right to recover, under the doctrine of "discovered peril", notwithstanding the fact that she was guilty of contributory negligence, as found by the jury, has for its basis the fact that, at the moment defendant's street car motorman discovered plaintiff's automobile at or upon the street car track and then realized her perilous position, there immediately rested upon him the duty to use all the means at his command to stop the street car before it struck plaintiff. The inquiry is not, when the motorman, in the exercise of ordinary care, should have discovered plaintiff's automobile at or on the track, but, when did he actually discover her there, and realize her perilous position; and, did he use all the means at his command, consistent with his own safety and the safety of the street car to avoid the collision?

It appears from the undisputed evidence in this case that defendant's motorman did not see plaintiff in a position of peril until the collision between the street car and the automobile was inevitable; and, further, that the motorman instantly made use of all the means at hand, as alleged by plaintiff, to stop the street car.

The collision occurred at the intersection of Throckmorton and Prescott Streets in the City of Dallas—Throckmorton extending north and south and Prescott, east and west. Plaintiff, operating an automobile, approached the intersection from the east, traveling at a rate of about 30 to 35 miles per hour; and the street car approached from the North, on Throckmorton Street, at about 7 to 8 miles per hour. When the street car was about 60 feet from the intersection, the motorman, Mr. Ramsey, saw plaintiff's automobile about 150 feet away to the east; and, about the same time, saw another automobile approaching the intersection from the west. The motorman then directed his attention to the automobile from the west, it being closer to the street car track than plaintiff's automobile. He applied his brakes, retarding the speed of the street car until the automobile from the west turned south on Throckmorton Street, and stopped. The motorman then released the brake, applied the electric current and speeded the car up to about 10 or 12 miles per hour. During this time, the motorman never looked to the east, in the direction plaintiff was first seen approaching the intersection; and there is nothing in the record to indicate that there was a necessity for the motorman to further direct his attention to plaintiff's automobile. She was not then in a position of danger. Mr. Ramsey said: "At that time there was nothing about the speed of the auto which attracted my attention—nothing at first sight. I did not notice it particularly. I was much closer to the intersection than the automobile. I had slowed down before I saw it. After that, I did not change my speed until I got to the pavement, or the north curb line. At that time (when he first saw it), the auto was quite a little distance away. I did not think there was any danger at all. I then pulled my controller around and increased my speed * * *. When I was feeding it up and watching this auto on my right (the automobile from the west) I did not know that the auto on the left (plaintiff's automobile) was going to keep on coming and not slow down and stop. I thought it would stop if I got there before it got across." The uncontroverted evidence further shows that when the automobile from the west had stopped, or turned onto Throckmorton Street, and the motorman released the brake, turned on the electric controller and speeded up the street car, he had gotten near the middle of the inter-

section of the streets when his attention was directed to the automobile involved in this collision. The motorman said it was about 60 feet from the track, and the automobile was then swerving slightly to the left, in an angular direction; and, on this point, plaintiff said she was on the track and that, at that time, the motorman was looking to the west, in the opposite direction from her; that she saw him turn on the controller and the car speeded up and collided with the rear end of her automobile, pushing it over against an automobile parked at the west side of the track. She said: "I told Mr. Owens that the motorman 'was looking off to his right and that he continued to look off until the collision occurred'. That is true. He never did see me so far as I could tell." It is evident from the record that the distances, speed of travel, and the exact location of the automobile and street car, immediately before and at the time of the collision, are merely approximations and must be so considered in passing upon the testimony of the case.

Mr. Ramsey further testified that, when he saw the automobile coming from the east, immediately before the collision, he knew a collision was unavoidable; he said: "I was doing my best to keep from hitting it; I was trying to keep away from the car (automobile) as much as I could. I did not notice the people particularly in the car. In fact, there was not time to take in all the details like that. * * * I have an electric control or key right at me. I turned it off with my left hand, and then with my right hand, I turn the key that puts on or off the air brake. I have no sand under my foot. We had sand, but you handle that with the brake. If you mash down on the brake, it applies sand. I don't remember whether I did. It would not have done any good if I had. The only thing we have to control the car with are those two keys and an electric current breaker that you can cut off. After I released my brake back there (when the street car entered the intersection) I applied my brake as soon as I next saw the car. That was about the middle of the street. * * * I immediately shut off the power and applied my brakes as quick as I could." Mr. Ramsey further said: "The sand flattens the wheels, makes them hump—square, in other words. It damages them immediately if the brake is on. It is a bad practice. The reason it damages the wheels is that it flattens them. I don't know just what

course it takes to doing so, but that is the way we are instructed out there. This was a flat surface where we were crossing. I had a reverse lever there—I did not use that. On that type car, it takes something like 30 to 40 seconds to get your reverse into effect. It would have been mighty bad practice to have used it." Sand is applied only when the track is wet.

■ The foregoing is a fair summary of all the evidence offered on the issues of "discovered peril". We have searched the record in vain for evidence to sustain the findings of the jury that defendant's street car motorman saw the plaintiff in a perilous position in time to avoid the collision; and, immediately upon discovery, failed to use all the means at hand to make an emergency stop of the street car. The evidence indisputably shows that the motorman was looking away to the west at the time plaintiff was in a perilous position, and, on discovery, immediately applied the brakes and cut off the electric current—the only recognized means of making an emergency stop of a street car. There is no evidence to the contrary. The application of sand to the wheels and the use of the reverse lever is shown to have been unavailable, to have stopped the street car without injury or damage to the same, and none of such means is specifically alleged by plaintiff to have been available.

■ Tex. Jur. Vol. 30, p. 681, Sec. 32, discloses the elements or factors that enter into the issue of discovered peril, viz.: "(1) The exposed condition brought about by the negligence of the plaintiff; (2) the actual discovery by defendant's agents of his perilous situation in time to have averted—by the use of all the means at their command, commensurate with their own safety—injury to him; and (3) the failure thereafter to use such means." All these elements, bearing on the controlling issue of discovered peril, are not only lacking of proof, but are conclusively shown not to have existed, other than contributory negligence of the plaintiff in failing to keep a proper lookout for the street car, and the control of the speed of her automobile.

■ We think the appeal presents reversible error in the trial court's overruling defendant's motion for judgment non obstante veredicto; and, on careful review of the entire record, this Court is enjoined to enter such judgment as should have been rendered in the court below. The judgment

should have been in favor of the defendant, for lack of evidence to sustain recovery on the doctrine of "discovered peril".

There are other assignments of error pertinently raised on this appeal, bearing on reversal and remand of the cause, but in view of the disposition of the case, as indicated above, such are rendered immaterial; we express no conclusion on the other assignments.

The judgment of the court below is reversed and here rendered for appellant.

Reversed and rendered.

### On motion for rehearing.

On motion for rehearing, appellee relies for error on alleged conflict with the case of Panhandle & S. F. Ry. Co. v. Napier, Tex.Civ.App., 90 S.W.2d 926, and other authorities of similar import.

In the Napier case, the El Paso Court of Civil Appeals reversed and remanded the cause, and, at a subsequent trial, on evidence analogous to that in the instant case, the injured plaintiff again recovered judgment under the doctrine of discovered peril. On a second appeal (Tex.Civ.App., 117 S.W.2d 826), the judgment was affirmed, a writ of error granted, and since our original opinion in this case (October 12, 1940), the Supreme Court has reversed the judgment of the El Paso Court of Appeals and remanded the cause to the trial court, to enable the jury to make satisfactory answers to questions involving contributory negligence and for the trial court to correct suggested errors in submission of discovered peril (143 S.W.2d 754, 755).

In the reported case, our Supreme Court holds, that the elements of discovered peril were not present, and, because of the facts being so analogous to those in the instant case, we are impelled to quote the findings of fact and the law pronounced by the Supreme Court underlying the doctrine of discovered peril applicable thereto and, we think, equally controlling in this case. We are unable to appraise appellee's alleged conflicting opinions.

The Supreme Court said:

"In our opinion, the evidence wholly fails to show that at the time defendant's servants discovered the approach of plaintiff's car they had any idea he was then in a position of danger; and further shows, without controversy, that no member of the crew knew that he was in a position of peril or danger at any time prior to the time his car struck the engine. Plaintiff's whole theory of discovered peril rests upon the assumption that as certain members of the crew saw the headlights of his car when it was approaching the railroad crossing, and while at a distance of more than one hundred feet from the crossing, they should have assumed that under the conditions he would probably drive his car in front of the engine or into the engine, and it was their duty to have prevented his doing so. The answer to this, it seems to us, is that this contention merely suggests a failure to use ordinary care, and does not in any sense make applicable the doctrine of discovered peril. It has long been settled that the doctrine of discovered peril does not arise unless and until the perilous position of the injured party becomes actually known to the defendant. The mere duty to discover his position of danger under the circumstances will not raise the issue. The burden is on the plaintiff to establish that the defendant actually realized the perilous position of plaintiff in time to have avoided danger to him with exercise of ordinary care in the use of all means at hand. In the absence of actual discovery and the appreciation of the peril, the rule of discovered peril has no application.

"It has often been held that discovery of a car approaching a railroad crossing at a time when its occupant is not in danger, is within itself not sufficient to raise the issue. It is further held that the person causing the injury is not bound to anticipate negligent conduct on the part of the injured person, but has a right to rely upon the assumption that the driver of the car is in possession of his faculties and will be able to control his vehicle so as not to come into a position of peril. Ft. Worth & D. C. Railway Company v. Shetter, 94 Tex. 196, 59 S.W. 533; Galveston, H. & S. A. Railway Company v. Price, Tex.Com.App., 240 S.W. 524; Texas & P. Railway Company v. Breadow, 90 Tex. 26, 27, 36 S.W. 410; Texas & N. O. Railway Company v. Adams, Tex.Civ.App., 27 S.W.2d 331; Young v. Dallas Ry. & Terminal Co., Tex.Civ.App., 136 S.W.2d 915; Texas & P. Ry. Co. v. Foster, Tex. Civ.App., 58 S.W.2d 557.

"The whole basis of plaintiff's contention in this instance is that the employees of the railway company, when within about

fifty feet of the railroad crossing, saw the lights of plaintiff's car as he rounded the curve some distance from the crossing. This must have been at a time when he was more than one hundred feet from the crossing, because it seems to be undisputed that for a distance of one hundred feet from the crossing the highway was perfectly straight. The fireman testified that he first discovered the car when the lights shined directly in his face. As the fireman was a distance of some fifty feet from the crossing when this occurred, it necessarily is true that the plaintiff's car was still turning the curve and had not reached the straight portion of the highway. In all events, it appears from the evidence that when the members of the crew first discovered the approaching car it was a considerable distance from the crossing. Certainly at this time plaintiff was in no danger. There is not a scintilla of proof indicating that he would continue until he came in contact with the train, or any circumstance to indicate that he would go into a perilous position. Besides, plaintiff testifies he was driving his car at the rate of about twenty miles per hour, that it was in good condition, and that he could have stopped it within twenty feet. The engine was backing at a rate of seven to fourteen miles per hour. It is undisputed that plaintiff's car struck the engine at a point fifty feet back of the end of the tender. As plaintiff could not have come into a perilous position until he reached approximately twenty feet of the engine, when it became too late for him to apply his brakes and prevent a collision, it is evident that the tender and engine necessarily entered the railroad crossing at a time when plaintiff was something like one hundred feet or more away. As plaintiff's car struck the engine fifty feet from the end of the tender, and as plaintiff necessarily did not come into a position of peril until the tender had at least reached the center of the highway, there is absolutely nothing which the members of the crew could have done after plaintiff became in peril which would have prevented the accident. The whole contention and argument of plaintiff rests upon the assumption that defendant should and could have protected plaintiff from the dangerous situation before entering upon the highway. Aside from the fact, as was said in the case of Texas & Pacific Railway Company v. Foster, Tex.Civ.App., 58 S.W.2d 557, 560, that this 'would, in ef-

fect, require operators of trains to slow up or stop every time they saw an automobile approaching a railroad track in the manner of this one, and that quite without regard to its speed when discovered, or its proximity to the crossing,' the fact remains that at all times before defendant's engine entered upon the crossing plaintiff was not in peril, and the employees had a right to assume that he would not in the exercise of due care come into a position of peril. As above suggested, plaintiff's contentions at the most pertain merely to acts which would suggest a failure to exercise ordinary care, and have no relation whatever to the doctrine of discovered peril."

It will be observed, from the disclosure in our original opinion, that the facts in the Napier case are analogous to the facts in the instant case, and the doctrine of discovered peril there applied by the Supreme Court, and in the cases cited, justify the conclusion reached by this Court.

Appellant's motion for rehearing is overruled.