CARRELL v. DALLAS RY. & TERMINAL
CO. et al.

No. 13017.

Court of Civil Appeals of Texas. Dallas.

April 25, 1941.

Rehearing Denied May 23, 1941.

White & Yarborough, of Dallas, for appellant.

Albert S. Reagan and Burford, Ryburn, Hincks & Charlton, all of Dallas, for appellees.

LOONEY, Justice.

Frank N. Carrell, a minor, by his father C. N. Carrell, as next friend, brought this suit against Ollie Anderson, R. D. Anderson and Dallas Railway & Terminal Company, to recover damages for alleged personal injuries sustained in a collision between a truck owned by the Andersons, and being driven by Ollie Anderson, in which the minor was riding as a passenger, and a street car owned and operated by the defendant Company. The case was submitted to a jury on special issues and, on their answers, the court rendered judgment in favor of the Andersons, and in favor of the defendant Company non obstante veredicto, from which plaintiff appealed.

■ As plaintiff did not ask for judgment against the Andersons on the verdict in the court below, and has not briefed the case as to them, we assume that plaintiff does not seek reversal of the judgment as to the Andersons. As to the Dallas Railway & Terminal Company, plaintiff seeks reversal on two grounds: (1) That the court erred in sustaining the Company's motion for judgment non obstante veredicto, because the motion was not signed either by the defendant or its attorneys; therefore, the court acted in the premises without a proper motion; (2) that the court erred in failing to render judgment for plaintiff on the verdict, and in rendering judgment non obstante veredicto in favor of the defendant Company, in that the finding of the jury, in favor of the plaintiff on the issue of discovered peril, was authorized by evidence, and entitled plaintiff to judgment.

■ The motion for judgment non obstante is in proper form, correctly styled and numbered, and was filed among the papers of the case; although not signed by an attorney, below a line drawn for such signature, is typed the following: "Attorneys for the Defendant, Dallas Railway & Terminal Company." The record discloses that plaintiff had notice of the motion, did not except, but appeared and contested same; failed in their motion for a new trial to raise the question, presenting it for the first time in an assignment of error. We think plaintiff waived the defect; besides, it is not shown that he was in any way harmed or prejudiced by reason of the failure of counsel for the Company to individually sign the motion. See Simmons v. Fisher, 46 Tex. 126.

The correctness, whether or not, of the action of the court in rendering judgment in favor of the defendant Company, non obstante veredicto, must be determined from the evidence; that is, the sufficiency of the evidence to raise the issue. If the issue were fairly raised by evidence, the court erred in rendering judgment; but if not, no error is presented.

The facts bearing upon the issue of discovered peril, in short, are these: The collision between the truck and the street car occurred about ten A. M., at the intersection of Waverly and Clarendon Streets, or Drives, in the City of Dallas. These streets cross at right angles, Waverly, upon which the street car tracks are laid, runs north and south and is about 40 feet in width; Clarendon runs east and west, and is about 34 feet in width, and has a cement pavement in the center. At the time of the collision, the streets were wet and slippery from recent rains; the street car was a large one, 48 feet in length, having side doors at the center; was traveling north on Waverly; reaching the intersection with Clarendon, the motorman either stopped the car, or slowed down (the evidence being conflicting), and just before proceeding into the intersection, the motorman saw the truck, at a distance of about 300 feet, traveling rapidly west on Clarendon, in the direction of the intersection. The motorman was asked:

"Q. You knew and realized at that time if he kept on coming that way, there was going to be a collision? A. I couldn't tell how fast he was coming when I saw him first.

"Q. If he kept on coming like he was when you first saw him, you knew and realized there would be a collision? A. Yes.

"Q. You knew and realized that before you started your street car, didn't you? A. Yes.

"Q. And you didn't know whether he saw you or not, did you? A. I couldn't tell that."

At another point in his testimony, the motorman said: "With that automobile coming at me from my right at that distance, when I first saw it, I didn't think there was any danger of its coming on and hitting me if I went ahead." On reaching about the center of the street, the motorman saw the truck again, then about 150 feet distant from the intersection, traveling from 30 to 35 miles per hour; it was

then, it seems, that the motorman sensed the danger of a probable collision and speeded up the street car, hoping to clear the street, and the front end of the car had reached a point a few feet from a line with the north curb of Clarendon when the truck, skidding, collided with the street car, striking it near the rear end, south of the middle door.

In view of the foregoing, we think it unreasonable to assume that the motorman thought there was danger of a collision with the approaching truck, 300 feet away at the time the street car entered the intersection. When he realized the probability of a collision, the motorman had the choice of two things; that is, to either stop the car, blocking the street and increasing the hazard, or speed up in an endeavor to clear the street so the truck could pass, and, although choosing the latter and, we think, the wiser course, the truck, skidding on the wet pavement, ran into the side of the car near the rear end.

Although, in answer to questioning, the motorman said he realized that, if the truck kept coming at the rate of speed it was traveling when he first observed it, there would be a collision, yet, he also testified that, at the distance the truck was from the intersection when first observed, he didn't think there was any danger of a collision at the time the street car entered the intersection. In the situation, we think the motorman had the right to assume that the driver of the truck would maintain a proper lookout for street cars; would not approach the crossing at a speed in excess of the legal rate, or at a greater rate than was reasonable, in view of the wet, slippery condition of the street, all of which he failed to do, as the jury found him derelict in each respect, and that his dereliction was negligence and a proximate cause.

A very similar situation was presented to this Court in Dallas Railway & Terminal Co. v. Glenn, 144 S.W.2d 961, 965, in which, speaking through Chief Justice Bond, we said: "It has often been held that discovery of a car approaching a railroad crossing at a time when its occupant is not in danger, is within itself not sufficient to raise the issue. It is further held that the person causing the injury is not bound to anticipate negligent conduct on the part of the injured person, but has a right to rely upon the assumption that the driver of the car is in possession of his faculties and will be able to control his vehicle so as not to come

into a position of peril." (Citing a number of pertinent authorities).

We are of opinion, therefore, that the issue of discovered peril was not raised by the evidence, that the court did not err in rendering judgment in favor of the Street Railway Company, non obstante veredicto; hence the judgment below, in its entirety, is affirmed.

Affirmed.